## COMMERCIAL INSURANCE COMPANY

*v.*

## ISAAC S. ROBINSON.

1. INSURANCE—*of the policy—construction.* Equivocal expressions in a policy of insurance whereby it is sought to narrow the range of the obligations insurance companies profess to assume, are to be interpreted most strongly against the company.

2. SAME—*construction of a particular clause in a policy.* An insurance policy provided that the company should not be liable "for any loss or damage by fire caused by means of an invasion, insurrection, riot, civil commotion or military or usurped power;   *   *   *   nor for any loss caused by the explosion of gunpowder, camphene or any explosive substance, or explosion of any kind:" *Held,* that, by a proper construction of the latter clause, the company was not thereby exempted from liability for losses by fire caused by explosion, but only from liability for losses caused by explosion.

| 64 | 265 |
| 22a | 335 |
| 22a | 337 |
| 64 | 265 |
| 31a | 298 |
| 64 | 265 |
| 144 | 400 |
| 64 | 265 |
| 149 | 333 |
| 64 | 265 |
| 55a | 334 |
| 58a | 165 |
| 64 | 265 |
| 175 | 117 |
| 77a | 417 |
| 64 | 265 |
| 81a | 235 |
| 81a | 688 |
| 64 | 265 |
| 181 | 580 |
| 64 | 265 |
| 182 | 46 |
| 64 | 265 |
| 197 | 1 13 |
| 100a | 1559 |
| 64 | 265 |
| 103a | 1545 |
| 64 | 265 |
| 114a | 1410 |

3. An insurance policy contained the following provision: "When personal property is damaged, the assured shall forthwith cause it to be put in order,   *   *   *   *   and shall cause an inventory to be made and furnished to the company, of the whole, naming the quantity, quality and cost of each article. The amount of sound value and of damage shall then be ascertained by appraisal of each article by competent persons (not interested in the loss as creditors or otherwise, nor related to the assured or sufferers), to be mutually appointed by the assured and the company; their report in writing to be made   *   *   *   *   *. The company reserves the right to take the whole or any part of the articles at their appraised value; and until such proofs,   *   *   *   are produced, and examinations and appraisals permitted by the claimant, the loss shall not be payable." A loss occurring, the assured furnished to the company an inventory of the goods burned or injured, with which the company expressed dissatisfaction, but made no offer to have appraisers appointed: *Held*, that, though the company might have insisted on the appointment of appraisers, the assured, when he furnished the inventory, did what the policy required him to do, and it was not incumbent on him to move further in the matter.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an action on a policy of insurance. The policy contained, among other provisions, the following: "When personal property is damaged, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory to be made, and furnished to the company, of the whole, naming the quantity, quality and cost of each article. The amount of sound value and of damage shall then be ascertained by appraisal of each article by competent persons (not interested in the loss as creditors or otherwise, nor related to the assured or sufferers), to be mutually appointed by the assured and the company; their report in writing to be made under oath before any magistrate or other properly commissioned person; one-half of the appraisers' fees to be paid by the assured. The company reserves the right to take the whole or any part of the articles

at their appraised value; and until such proofs, declarations and certificates are produced, and examinations and appraisals to be permitted by the claimant, the loss shall not be payable."

A trial by jury in the circuit court resulted in a verdict and judgment for the plaintiff. The defendant appeals.

Mr. O. B. SANSUM, and Messrs. DENT & BLACK, for the appellant.

Messrs. E. & A. VANBUREN, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

The policy in this case provided that the company should not be liable " for any loss or damage by fire caused by means of an invasion, insurrection, riot, civil commotion or military or usurped power;      *      * .      *      nor for any loss caused by the explosion of gunpowder, camphene, or any explosive substance, or explosion of any kind."

The main question is as to the construction to be given to this last clause. It is contended by counsel for the company that it protects the company from liability for any loss by fire where the fire has been produced by an explosion. It is insisted on the other hand, by counsel for appellee, that the clause protects the company only against losses occasioned directly by an explosion, and not against losses from fire where the fire has been caused by an explosion.

Counsel for appellant, in support of their position, cite *St. John* v. *Am. Mut. Ins. Co.* 1 Kernan, 516; *Haynard* v. *Liverpool and London Ins. Co.* 7 Bosw. 385, and *Stanley* v. *West. Ins. Co.* 3 Exch. 71.

In the case in 1 Kernan, the court of appeals was divided. We have read the opinions of the majority and minority of the court, and consider the reasoning of the latter the more satisfactory. Even the majority of the court did not agree

upon the grounds for affirming the judgment of the lower court.   As pointed out in the dissenting opinion, the judgment was affirmed not merely upon different, but adverse reasons. The case is, therefore, worth little as authority.   The case in 7 Bosw. is not correctly stated by counsel for appellant.   In that case there were two clauses in the policy.   Counsel gave but one.   The other was explicit and, in terms, excluded liability for losses by fire arising from an explosion.   The English case cited is in point for appellant.

If this were a question as to an alleged rule or principle of the common law, with these authorities cited on the one side, and none upon the other, we might repose securely upon them, and hold them decisive of the case before us.   But it is simply a question as to the interpretation of a few words in a written instrument which are susceptible of two different interpretations.   We are to determine which is the more reasonable construction, and if our judgment is satisfied on this point, we must accept its conclusions, though differing from those of the courts to which reference has been made.

Let us remark, in the first place, that equivocal expressions in a policy of insurance, whereby it is sought to narrow the range of the obligations these companies profess to assume, are to be interpreted most strongly against the company. *Aurora Fire Ins. Co.* v. *Eddy*, 49 Ill. 106.   The companies have the preparation of their own policies, the choice of language in which to express their obligations, and they show a studious solicitude to limit their liability.   Their policies are prolix with provisions of this character, and the public must accept them or go without insurance.   We have no right to censure the companies for this, and do not, but the reading of a policy furnishes a sufficient reason for the rule of interpretation formerly laid down by this court.

It will be observed that, in a clause of the policy preceding the one under consideration, the company stipulated that it should not be liable " for any loss or damage *by fire* caused by means of an invasion, insurrection," etc.   Here exemption is

specially secured against liability for losses *by fire* caused in a certain manner. But the clause under consideration leaves out the words " by fire." It secures exemption from liability for losses caused by explosion, but not from liability for losses *by fire* caused by explosion. The difference in phraseology between the two clauses is so marked, that, when we consider their connection with each other, we can not resist the conclusion that the difference was intended.

Whether the difference was intended or not, can not be certainly ascertained, but it is reasonable to resolve the doubt against the company. The object of the company's existence is to insure against fire. That is what it holds itself out to the public as able and willing to do. When a person takes out a policy, and pays his premium, he takes it for granted, without reading his policy, that he can not be permitted to make the risk more hazardous to the company by storing highly inflammable materials upon his primises. He knows that would be acting in bad faith with the company, and that the policy has probably provided against it. But he would have no reason to suppose that, among the voluminous stipulations of the policy, there would be found one intended to deprive him of its benefit because a fire, which has destroyed his property, originated in another house a half mile distant, in the explosion of a camphene lamp. Most fires originate in acts of carelessness, and it is chiefly to guard themselves against the carelessnes of others that prudent persons insure. Yet the construction of this policy contended for by the company would make the assured assume the liability for the carelessness of others. He is thus deprived of the very protection he seeks by his insurance if, when his house burns up, he can be denied the payment of his policy because the fire was caused by an explosion upon the premises of others. The great fire of Chicago is supposed to have originated in the overturning and explosion of a lamp, but we are not aware that any of the insurance companies that suffered by that fire have sought to interpose

270      COMMERCIAL INS. CO. v. ROBINSON.    [Sept. T.,

Opinion of the Court

this defense, although this clause is a very common one in insurance policies, and was probably contained in many that had been issued on the property then destroyed.

Counsel for the company, feeling the unreasonable character of this condition, with their interpretation, in cases where the fire comes from an explosion on other premises, speak of it as if it referred only to explosions on the premises of the assured. But the policy will bear no such construction or limitation. We must either hold that the clause refers to loss by explosions simply, without reference to fire, or to losses by fire caused by explosion anywhere, whether on or remote from the premises. There is no middle term. It must receive one of these constructions or the other. One is consistent with the context, reasonable in itself, and just to both parties. The other requires the interpolation of two additional words in the policy, is inconsistent with the context, and in a large degree would make fire insurance a mere mockery. We can not hesitate which construction to choose.

But, say the counsel for appellant, this company does not profess to insure against losses by explosion, but only by fire, and the clause, construed as we construe it, is unmeaning, or at least useless. But not so. The clause was designed to apply to all cases where the explosion was the immediate cause of the loss. Suppose fire is carelessly applied to powder or other explosive substance. An explosion follows which rends furniture and building. This explosion is the result of the ignition of the explosive material, and it might be claimed that the loss caused thereby was a loss caused by fire. The courts might not so hold, independently of the clause in the policy, but we can well understand, when we examine these policies, that the insurers may have introduced this clause for the purpose of leaving no room for argument or doubt. Again, suppose a case where a fire is speedily subdued, but before it is, it has ignited powder, and an explosion has taken place which has caused much damage but has not extended the fire. In such a case, the company would claim they were

protected by this clause from the liability for the consequences of the explosion.

It is not necessary, however, for us to show how the clause was designed to operate. It is sufficient to say that, in our judgment, it can not receive the construction claimed by the company.

It is urged that the stipulations of the policy were not complied with in regard to an appraisement. An inventory of the goods burned or injured was furnished to the company. They expressed their dissatisfaction with it, and might have insisted on the appointment of appraisers. They made no offer to have them appointed, and it was not incumbent on the appellee to move further in the matter. He did what the policy required him to do when he furnished the inventory.

The judgment of the court below is affirmed.

*Judgment affirmed.*