## GERMANIA FIRE INSURANCE COMPANY
### V.
## WALTER S. FRAZIER.

*Fire Insurance—Policy—Arbitration and Appraisement Clauses—Strict Construction—Pleading—Instructions.*

1. A clause in an insurance policy which in effect restricts the liability of the company, excuses it from paying a *bona fide* loss, or which works a forfeiture, will be strictly construed against the insurer.

2. In an action to recover for partial loss on a policy of fire insurance, containing arbitration and appraisal clauses, it is *held:* That said clauses should be construed in connection with each other; that the party desiring an appraisement should take the initiative; that the insurer, if it desired an appraisement, should take steps to secure it within a reasonable time, and at least within the time limited for the payment of the loss; that the plaintiff has not refused to arbitrate, but has at all times acquiesced in the efforts of the defendant to secure an appraisement; that the mere failure of the plaintiff to choose a competent and unprejudiced appraiser would not of itself work a forfeiture of his demand, or excuse the defendant from taking steps to secure another set of appraisers; that no actual fraud on the part of the plaintiff appears to have been shown, even if such defense was admissible without a special plea; that certain pleas were not sustained by the evidence; and that there was no error in the refusal to give certain instructions.

[Opinion filed January 22, 1887.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Statement by LACEY, J.   This was a suit commenced on the 21st day of April, 1884, in the Circuit Court by the appellee against the appellant based on an insurance policy against loss by fire, issued by the latter to the former in the sum of $1,000 for one year on vehicles manufactured and in process of manufacture and all material and stock for the manufacture and finish of the same, contained in the four story building of and belonging to the appellee.

The policy covered the time between the 22d day of February, 1883, at noon, and the 22d day of February, 1884, at noon.   The loss, if any, was "to be paid sixty days after due notice and proof of the same, by the assured, was received at the office of the general agency of said company, in the city of New York, in accordance with the terms of the policy," but provided, "in case difference shall arise touching any loss or damage, after proof thereof has been received in due form, the matter shall, at the written request of either party, be submitted to arbitrators, indifferently chosen, whose award in writing shall be binding on the parties as to the amount of such loss or damage, but shall not decide the liabilities of the companies respectively."   The policy further provides that "damages to property not totally destroyed shall be appraised by disinterested men mutually chosen by the assured and the companies, and sworn to decide impartially; and the companies reserve the right to take the articles damaged or any part thereof at their appraised value.   When personal property is damaged the assured shall cause it to be put in the best order possible, properly arranged, and make an inventory thereof, naming the quantity and cost of each article; and upon each article the damage shall be separately appraised and the detailed report of the appraisers under oath, in writing, shall form a part of the proofs required, one-half of the appraisers' fee to be paid by the company."   Further, "the assured shall forthwith give notice of said loss to the companies through their general agents in the city of New York, and as soon thereafter as possible render a particular account of such loss, signed and sworn to by them, stating whether and what other insurance has been made on the property, etc.,

and the cash value of the property and their interest therein," and the general requirements of such proof of loss.

"In case of loss the assured shall only recover such proportion of the loss, not exceeding the sum insured, as the sum insured by this company bears to the total amount insured."

It is averred that the property insured was damaged by fire October 30, 1883, by accident and misfortune, in the sum of $6,000.

The evidence shows that the appellee immediately gave notice in writing of the loss, and on November 27, 1883, delivered to appellant proof of loss required by the policy.

And the declaration avers that "he performed all the acts and things required of him by said policy, and the defendant then and there received and accepted the said proofs as satisfactory and waived any other acts on the part of plaintiff."

The appellant first pleaded the general issue, and then a special plea setting up the clause requiring the damaged property to be appraised by disinterested appraisers mutually chosen, etc., and averring that a difference arose between them touching the loss, and avers that appellant had always been willing that such difference should be submitted to the judgment of the arbitrators in the manner provided in the policy, whereof the appellee had notice, but appellee refused, etc., to submit; and another plea of the same purport, averring that appellee refused to allow the appraisers to proceed after being chosen, and appellant has always been willing to proceed and so notified appellee, but the latter refused.

The appellee replied in several replications in due form to these pleas, that appellant had waived its right to have arbitrators appointed; that the loss had been adjusted according to the policy, and that he had never refused to have appraisers appointed, but had always been willing to have appraisers appointed and to submit, etc., and appellant refused.

Then appellee replied in two separate replications to the second and third pleas, that he had inquired of the appellant whether or not it admitted liability upon and under the policy, and appellant refused to admit liability.

The two last replications were demurred to by appellant and demurrer sustained.

Further replication to the third plea that appellee did not refuse or violently prevent the arbitrators from proceeding, but had always been willing they should, etc., and denied that appellant had always been willing and ready to complete the appraisement.

There were general rejoinders.

The cause was tried before a jury in October, 1884, and on the 24th day of that month the jury found a verdict for appellee for $502.50, the amount he was entitled to on the policy. The whole amount of insurance in all companies on same property was $4,500.

The jury must have found, to arrive at this verdict, that the entire loss was at least $5,000.

Appellant only made motions for new trial and in arrest, which were overruled by the court and appeal taken to the Appellate Court.

Messrs. CHARLES WHEATON and FRANK H. COLLIER, for appellant.

The appraisal clause in a policy of insurance is a valid and binding one, and after an appraisal has been demanded by an insurance company no recovery can be had upon the policy unless such appraisal takes place or is waived by the insurance company. The facts in this case show beyond peradventure that a deliberate attempt was made by the appellee to prevent an appraisal from the beginning. There is no doubt that he interfered unlawfully in the first appraisal, and there is no doubt that he so interfered because every valuation that the first appraisers made was less in a substantial degree than the amount he claimed in his proof of loss.

The question that arises is, was an honest effort made on the part of W. S. Frazier, the assured in this case, to have an appraisal and an honest appraisal? If he had desired an honest appraisal in the first place he would have appointed a competent person to make it. Neither Mr. Coy nor Mr. Fisher were competent, as the evidence conclusively shows.

The same ground that will induce a court to set aside a verdict of a jury and grant a new trial will induce them to vacate

an award.   Williams v. Craig, 1 Dallas, 313;  Bassett's Case, 2 Cow. 458;  Van Cortland v. Underhill, 17 Johns. 405.

All the arbitrators must act together.   The parties are entitled to the arguments, experience and judgment of each at every stage of the proceedings, and their bearing and influence on the minds of the others ; and an award will be set aside for the intoxication of any one of them, rendering him incompetent.   Smith v. Smith, 28 Ill. 56.   The relations of jurors to litigants are like those of arbitrators, and the same duties are enjoined upon each of them, especially as to keeping their minds free from bias, prejudice, partiality and undue influence. Spurck v. Crook, 19 Ill. 415, 425;  Stampofski v. Stoffens, 79 Ill. 303.   Arbitrators should so conduct themselves as to prevent the possibility of improper bias or even suspicion.   Morse on Arbitration, 537.   Like a Judge or juror, though his judgment of the pending controversy be altogether a just one, yet an arbitrator is false to his duty if he exposes his mind to the chance or danger of perversion.   Strong v. Strong, 9 Cush. 570.   There is nothing singular in the conclusion here suggested of influences in themselves undue, but altogether short of corruption, being so applied to the mind of another as to impair the validity of an act otherwise lawful.   Fox v. Hazelton, 10 Pick. 277 ;  Morse on Arbitration, 106 ;  Johnson v. Holyoke Water Power Co., 107 Mass. 473; Jones v. Miller, 1 Dall. 205.

After a man is chosen arbitrator, he ought not to hear a word of private *ex parte* conversation on the subject with either of the parties.   A court can not say it had no influence upon his mind.   Graham v. Pence, 6 Randolph, 537; Morse on Arbitration, 106;  Russell on Awards, 205.

Mr. ELBERT H. GARY, for appellee.

The provisions of a policy requiring proofs of loss and appraisal are to be construed strictly against the insurer.   Insurance Co. v. Robinson, 64 Ill. 265 ;  Ins. Co. v. Walsh, 54 Ill. 164;  Ins. Co. v. Eddy, 49 Ill. 106;  Roper v. London, 1 E. & E. 825;  Ins. Co. v. Sennett, 41 Pa. 161.   All that can be required of the assured is a reasonable and substantial compliance with the conditions of the policy.   Wood on Fire Ins., 727.

The provisions of the policy requiring proof of loss and appraisal may be waived in express terms or by implication. Ins. Co. v. Kranich, 36 Mich. 293; Ins. Co. v. Fay, 22 Mich. 468; Ins. Co. v. Schueller, 60 Ill. 465; Pennell v. Ins. Co., 73 Ill. 303; Rokes v. Ins. Co., 51 Md. 512.

The insurers are estopped to rely on any fault which they have contributed to produce.  Cornell v. Leroy, 9 Wend. 163; Uhrig v. Ins. Co., (N. Y.) 15 Ins. L. Jour. 312.

If there be any evidence from which a waiver of proof may be inferred, it should be left to the jury.  Ins. Co. v. Taylor, 73 Pa. 342; Ins. Co. v. Lippold, 4 Ins. L. Jour. 430; Underwood v. Ins. Co., 57 N. Y. 500.

LACEY, J.   The only defense made to the appellee's suit and claim for damages was under the clause in the policy presented in special pleas that in case of loss by fire, "damages to property not totally destroyed shall be appraised by disinterested men, mutually chosen by the assured and the companies and sworn to decide impartially,  *  *  *  and the assured shall cause to be appraised the damages on each article separately, and the detailed report of the appraisers, under oath, in writing, shall form a part of the proof hereby required."

The averments of the plea in regard to the failure of appellee to comply with the provisions of the policy in that particular were that the "alleged loss in respect whereof the action had been brought has not been adjusted according to the tenor and effect, true intent and meaning of the said article; that a difference arose between appellant and appellee touching the said loss, and the appellant had always been willing that such difference should be submitted to the judgment and determination of appraisers in the manner mentioned in the article, whereof the appell e had always had notice, but had wholly refused to have the same submitted to the judgment and determination of appraisers, etc., nor had the appellee made an inventory of the damaged property as provided in the article, etc."  In the third plea appellant avers that after the appraisers were appointed the appellee refused to continue such appraisal etc., and violently prevented the appraisers from examining the property.

The appellee rejoined a waiver by appellant of the require-ments set up in these pleas and also took issue on the matters of fact averred in them.  The jury having found in favor of appellee on these issues, it is insisted that such verdict was contrary to the weight of the evidence and that the court below erred in refusing some of its offered instructions.

In order to arrive at a proper conclusion in the case it will be necessary to consider at some length the evidence.

In the first place the fire, and loss to appellee in consequence, took place on the 30th day of October, 1883, and immediately appellee gave to the appellant notice of the loss, and on No-vember 27, 1883, delivered to the appellant proofs of loss. There was no objection made at the time these notices and proofs were given of any want of formality or want of being delivered in apt time.  The appellee's manufacturing estab-lishment was situated in Aurora, Kane County, and appellant's agents did business in Chicago, where its office was, the main office being in New York City.

Immediately after the fire the appellant's agents went to Aurora and visited the injured building, and determined to have an appraisement made under the terms of the policy. On the 6th of November, Carson, agent of appellant, went to Aurora and took with him one Wm. Smith, and requested an appraisal, when appellee agreed to it and chose James O'Don-nell, and requested him to be there and act.

Carson presented a form of agreement with a good many conditions in it not provided for in the policy which appellee objected to and refused to sign, so the attempt at appraisal failed at that time.  On December 20th another attempt was made by Carson, representing the appellant, and appellee, to appraise.  Carson chose Wm. Smith and appellee George Smith, and these two were sworn in.  After proceeding for some time, and the two appraisers wrangling over the amount at which some of the articles should be appraised, the effort to appraise was brought to a sudden termination by Wm. Smith refusing to proceed any further with the work, although appellee insisted he should stay and go on with the appraisal. The appellant complains that appellee was at fault for offer-

ing his opinion of the amount of the damages while the arbitrators were at work. But it would appear from all the evidence that the jury had abundant grounds to find that Smith was a strong partisan in favor of appellant, bigoted, overbearing and ungentlemanly in his behavior toward the other arbitrator, and was unjustified in breaking up the arbitration. Whatever such finding by the jury might amount to in the final consideration in the case the appellee should have the benefit of it. On the 2d of January, 1884, another attempt was made to get an appraisement, and the same Wm. Smith, unfit as he had shown himself to be, and who had broken up the former attempt, was presented by appellant's agents for an arbitrator in another arbitration, and appellee objecting to him and appellant refusing to take any other, the attempt again failed.

The agent and Wm. Smith then went back to Chicago.

On January 21, 1884, still another and the last attempt at appraisal was made. Carson, representing appellant, chose one Bohannon, whom all agree was a very fit and competent man, and appellee chose one Fisher, who had lately come from Wisconsin.

The two appraisers thus chosen proceeded to make the appraisement and when they had completed about three-fourths of the work, fixing the amount of the damages as far as they had proceeded at $4,000, the agent Carson, discovering a book in the hands of the appraiser Fisher, of what he supposed to be a list of the goods and prices set opposite each item, a copy of appellee's proof of loss that appellee had handed the insurance company, and upon Fisher refusing to show it to the other appraiser, broke up the appraisement and went back to Chicago. This little memorandum book was in all probability what Carson supposed it to be, a copy of the proof of loss, or at least a book with a list of the items of property damaged to be appraised, with an estimate of damages of each item made by some one set opposite.

As shown by the testimony of Carson he refused to proceed on two alleged grounds, which he made known to appellee at the time. 1st. Because Fisher was using the book.

2d.   He was wholly incompetent.   No one, either the appellant or appellee, ever asked for or attempted to get another appraisement afterward.   The appellee waited three months and then brought this suit to recover the amount of ·his damages.

The question presented is, whether there was any evidence before the jury upon which the verdict can be sustained.

In determining this question it will be necessary to examine into the nature of the clause in the policy under which this defense is interposed, and also the state of the pleadings.

In the first place, we may observe that clauses of this character, the effect of which is to restrict the liability of the company and to excuse it from paying its *bona fide* honest losses and to work a forfeiture, are strictly construed against the insurer, and are allowed to be easily waived.   Commercial Ins. Co. v. Robinson, 64 Ill. 265; Aurora Fire .Ins. Co. v. Eddy, 49 Ill. 106; McBride v. Ins. Co., 30 Wis. 568; May on Ins., 2d Ed., Sec. 175.

The appellant seems to have tried this case on the theory that if the appellee failed for any reason, after he had been notified by appellant that an appraisal was demanded, to procure an appraisal, and present such proof to the latter with his other proof of loss, then he was barred from recovery. It is contended that if the appellee did not appoint a;competent and unprejudiced person as appraiser to appraise said loss, and, on the contrary, appointed an incompetent and prejudiced person, by means of which the appraisement failed, then he could not recover.   The appellant asked and the court gave instruction No. 4, based on this theory.

The same argument is contained in appellant's briefs presented here.

The contention seems to be that the duty to bring about the appraisement rested wholly on the appellee, and that it was not necessary for appellant to take any steps or make any move in the matter whatever, further than to demand an appraisement in the beginning.   This, it is claimed, was a condition precedent to the right of recovery.   We think the law is not by any means as supposed.

The obligations of the agreement are mutual.   The arbitra-

tion clause is put into the policy for the benefit of either party who may seek to avail himself of the privilege. The policy says "in case difference shall arise' touching any loss or *damage* after proof thereof has been received in due form, the matter shall, at the written request of either party, be submitted to arbitrators indifferently chosen, whose award in writing shall be binding on the parties as to the amount of such loss and damage, but shall not decide the liabilities of the companies respectively."

This clause alone would cover the present difference, and the clause in reference to appraisal in case property is not totally destroyed but damaged, and which is set out in the plea, should not be construed independently from the above but in connection with it, and the terms of the first should be held to be modified only so far as something is added not contained in it. The second clause provides that the damage to the property shall be appraised by disinterested men mutually chosen by the assured and the companies sworn to decide impartially. This addition probably would be implied in the first, but if not it is made explicit and the appraisers are to be sworn and to be mutually chosen. And appellant reserved the right to take any article of the damaged property at its appraised value, and to enable it to do so the appraisers are to appraise each article separately and make a detailed report of the appraisers under oath in writing. These little additions do not change the main features of the first clause although in the one case they are termed arbitrators and in the other appraisers.

It appears from this citation that it was incumbent on either party that wanted an arbitration of damages to give the opposite party notice of such desire in writing, and as each party is to have a share in choosing the appraisers, some time and place should be fixed where the party desiring the appraisement would meet the opposite party to "mutually" choose such appraisers. Some one must make these advances or else the parties could never get together to accomplish the work, and the contract says that the party desiring the appraisement should give the written request. In other words he

should take the initiative. The party receiving the notice simply acquiesces and meets the notifying party at his request, acts with him and seconds the effort. That is all the law requires of him—all the contract requires. This would be no more than a fair construction of the second clause if it should be held to stand alone, except probably as to the written notice; for how otherwise could the appraisers be " mutually " chosen ?

It requires the presence of both parties, and this last appraisement clause is only inserted for the benefit of the insurance company, to enable it to take the appraised property if appraised under value. Therefore the company should be required to do everything necessary to facilitate the appraisement, if it desires one. The insured may have no interest to, nor is he required to force an appraisal on the insurer. The insurers should make these advances within a reasonable time, at least so as to enable them to fulfill their contract to pay the loss within sixty days as the policy requires, otherwise it should be held to have waived the privilege of demanding an appraisement. The principle to which we refer was held by the Supreme Court in the Com. Ins. Co. v. Robinson, 64 Ill. 265. In that case a similar point was made as in this, on almost an exact copy of the second clause in the policy sued on. The court, by Chief Justice Lawrence, held as follows :

" It is urged that the stipulations of the policy were not complied with in regard to an appraisement. An inventory of the goods burned or injured was furnished to the company. They expressed their dissatisfaction with it, and might have insisted on the appointment of appraisers. They made no offer to have them appointed and it was not incumbent on the appellee to move further in the matter. He did what the policy required him to do when he furnished the inventory."

In this case the appellee also furnished the inventory, which was not objected to as not filling the requirements of a policy and proof of loss under the policy. It is only objected that there was no appraisement. In the case at bar the appellee at all times acquiesced in the efforts of appellant to get an appraisement. He made no objections to it and assisted in

getting appraisers, and never denied the appellant's right to have an appraisal.

He always responded to every effort that was made. He showed no captious disposition to thwart the effort to get an appraisement. When an effort to procure an appraisement failed it was necessary for some one to take the first steps to get a new set of appraisers, and whose duty should it more properly be than the one who desired the appraisement? From what we have already said this will be apparent, and it would be the duty of appellant after the second effort had failed to take steps to get another set of appraisers instead of waiting three months and assuming that it was the duty of the appellee to effect the appraisement himself.

Appellant, it appears from the defense set up here, has denied its liability on the policy from the date of the last attempt at appraisal, though it did not communicate that fact to appellee except by neglecting to pay the loss and taking no further steps in the matter and setting up such defense on the trial.

Under these circumstances it would have been useless for appellee to attempt any new appraisement and he was not required by law to do so. McBride v. Ins. Co., 30 Wis. 568.

The next point fairly presented is, was the conduct of the appellee such at the last attempted appraisal as to forfeit all right to the insurance money claimed by him, or rather were the jury justified in finding as a fact under the law that it was not? It is claimed as appears by appellant's instructions to the jury and argument, that if appellee failed to choose a competent and unprejudiced appraiser in the person of Fisher, no matter how much he might have been mistaken in the man or how honestly he acted, yet he forfeited all right to collect his insurance money—gave the appellant the right to dissolve the body of appraisers, and repudiate the claim.

Such doctrine can not be sanctioned by this court. A number of cases are referred to by appellant to show that appellant was justified in refusing to complete the appraisal on the account of the misconduct of appellee, and Fisher, the arbitrator chosen by him, and among them Spurck v. Crook, 19 Ill. 415, and Moshier v. Shear, 102 Ill. 169. In those cases the

award in each was set aside on account of the misconduct of the arbitrators and possibly of one of the parties, but was it supposed by the court that the party for whose benefit the misconduct was committed should forfeit his entire demand on that account? Although the arbitration awards were set aside the claimant could still pursue his remedy in the usual way.

If there is any foundation for the claim that the appellee forfeited his entire insurance money on account of what took place before the last board of arbitrators, it must be under this clause in the policy: "All fraud or attempt at fraud, or false swearing, on the part of the assured, shall cause a forfeiture of all claim under this policy." If this should be held to apply to the proceedings before appraisers it would have to be established that the appellee attempted fraud before the arbitrators.

It would be necessary to make out such defense under a proper special plea setting out the above clause in the policy and its breach, with proper specifications, as all such special matters must be pleaded as special defenses. They need not be set out and negatived in the declaration, but if relied on as a defense they must be specially pleaded.

Again, if such question were in issue we can not say from the evidence that the jury were not justified in finding that, while the action of the arbitrator and appellee may have justified appellant in breaking up the arbitration, yet no actual fraud was intended by appellee, and that he was not responsible for the incompetency of Fisher.

The third special plea, that apparently was intended to set up some defense in regard to the causing of the failure of arbitration by appellant, does not cover the case, and that plea was not sustained by the evidence. Appellee did not refuse to continue the appraisement, nor violently prevent the examination of the property, as the plea avers. It was the appellant's agent, Carson, that broke it up, for justifiable cause it might have been, but that was not the plea; the plea was, appellee did so. The second plea was not sustained, for the evidence did not show that appellee wholly refused to have his claim submitted to the determination of arbitrators, but, on

the contrary, he always manifested a willingness to have it done whenever he had been requested.

The second refused instruction for appellant was immaterial under any plea in the case. As it will be seen from what has been said, it was no defense that Fisher was not an unprejudiced person; at least it did not justify appellant in refusing to ask for a new appraisement, even if justified in breaking up the one then taking place. The same may be said of the third appellant's refused instruction. The proof that appellee gave Fisher the book as supposed in the instruction, and Fisher refused to produce the book and to submit it to Bohannon, and the appraisement failed for that reason, does not establish the averments in the plea that appellee refused to continue the appraisal. It is the occasion of the act of Carson, coupled with his objection of the incompetency of Fisher, probably in dismissing the appraisers and refusing to continue. The fourth refused appellant's instruction is bad for the same reason, and also for the reason that it was required for appellee to move to get another set of appraisers after the one in question was discharged, without notice that another was desired, as we have already held. Besides, the fourth, seventh and ninth given instructions for appellant, though erroneous, covered the entire ground in those above noted refused.

The evidence abundantly shows that the appellee sustained a loss of at least $5,000, a sum greater than the amount of his entire insurance, and is justly entitled to the amount he has recovered in this case, unless the special defense set up in the pleas, which we think the jury was justified in finding was not sustained.

No issue of fraud or attempted fraud was made or tendered as to whether Carson was justified in breaking up the last attempted appraisement on account of one of the appraisers' incompetency or because appellee gave Fisher the book. The question was whether appellee had refused to arbitrate or had prevented the last arbitrators from continuing. On these issues we think the appellant was fairly beaten, as well as on the issue of waiver of the appraisal.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*