THE FOREST CITY INSURANCE COMPANY

*v.*

JAMES HARDESTY, Admr.

*Opinion filed October 19, 1899.*

1. INSURANCE—*equivocal expressions in a policy are interpreted most
strongly against the company.* If a clause in an insurance policy is sus-
ceptible of two interpretations, that most favorable to the assured
will be adopted in order to indemnify him for the loss sustained.

2. SAME—*in construing a policy the intention of the parties must be kept
in view.* The assured is not bound by general words in the policy,
although broad enough to include a particular contingency which
afterwards happens, where the event is of such a character that
it cannot reasonably be supposed to have been in the contempla-
tion of the contracting parties.

3. SAME—*when change of title by death of the assured before loss does
not work a forfeiture.* The death of the assured before the loss of
the property by fire does not work a forfeiture of a fire insurance
policy under a condition that it shall be void if any change takes
place in the title or possession of the assured, where it is doubtful
whether the words "change of title," as used in the policy, refer to
a voluntary or involuntary act on the part of the assured.

4. EXECUTORS AND ADMINISTRATORS—*when administrator may re-
cover for loss occurring after death of assured.* An administrator may
maintain an action upon a fire insurance policy issued to his intes-
tate, to recover for a loss occurring after the latter's death, where,
subsequent to the clause which merely insures the intestate, there
is a provision agreeing to make good to the assured, his adminis-
trators or assigns, such immediate loss or damage as shall happen
by fire during the term of the policy.

*Hardesty* v. *Forest City Ins. Co.* 77 Ill. App. 413, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Hamilton county; the Hon. E. E. NEWLIN, Judge, presiding.

This is an action of assumpsit, brought on May 11, 1896, by James Hardesty, administrator of the estate of Henry Hardesty, deceased, on a fire insurance policy, dated January 21, 1892, issued to Henry Hardesty, insuring certain dwelling houses, household furniture, and grain hereafter described.

The declaration sets out the policy *in hæc verba*, and contains averments setting up the facts hereinafter stated. The appellant filed a general demurrer to the declaration, which was overruled by the trial court; and a rule to plead was entered. The appellant elected to stand by its demurrer, and refused to plead. Default was entered, and the cause was submitted to a jury, which returned a verdict in favor of the appellee for $250.00. Judgment was entered upon the verdict against the appellant.

An appeal was taken to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court, and granted a certificate of importance.

The present appeal is prosecuted from the judgment of affirmance, so entered by the Appellate Court.

The following are the provisions of the policy, which are material in the decision of the questions involved, to-wit: "The Forest City Insurance Company of Rockford, Illinois, in consideration of premium refunded on policy No. 47,951, and a note for $250.00 due January 1, 1892, does insure Henry Hardesty against loss or damage by fire, etc., * * * to the amount of $700.00 on the following property, to-wit:" (here follows the description of two dwelling houses, and the furniture in one of them, and of a frame barn and certain grain and hay in the buildings on the premises), "all situated (except as other-

wise herein provided) on, and confined to, premises owned and occupied by assured, to-wit: one hundred acres in section 12, etc.,    *    *    *    Hamilton county, Illinois."

"And the said company hereby agrees to make good unto the said assured, his executors, administrators, and assigns, all such immediate loss or damage not exceeding in amount the sum or sums insured, as above itemized, nor the interest of the assured in the property, as shall happen by fire, etc.,    *    *    *    to the property above specified from the twenty-first day of January, 1892, at noon, to the twenty-first day of January, 1897, at noon, except such portion of the above mentioned time as this company shall hold against the assured any past due and unpaid promissory note or order given as payment in whole or in part of the premium charged for this policy, during which portion of time this policy shall be null and void," etc.

"If the assured have, or shall hereafter obtain, any other insurance (whether valid or not) on the property hereby insured or any part thereof, without consent from the secretary of this company endorsed thereon, or if the above mentioned buildings, or any part thereof, shall be occupied or used, except as herein stated, or become vacant or unoccupied; or if the risk be increased by the erection of adjacent buildings, or by any other means whatever, without consent of the secretary of this company endorsed hereon; or if any encumbrance by mortgage or otherwise has been or shall be executed thereon, unless the same was fully stated in said application, or endorsed hereon by the secretary of the company; or if foreclosure proceedings shall be commenced; or if the assured fails to make known any fact material to the risk, or if any change takes place in the title, possession or interest of the assured in the above mentioned property; or if this policy shall be assigned without the consent of the secretary endorsed hereon, then in each and every such case, this policy shall be void."

Henry Hardesty, the assured, died intestate on April 16, 1894, leaving a widow, Nancy A. Hardesty. On April 24, 1894, James Hardesty, appellee, was appointed administrator of the estate of said Henry Hardesty. On November 28, 1895, the two dwelling houses covered by the policy were totally destroyed by fire.

WEBB & LANE, and CONKLING & GROUT, for appellant:

The policy says the company "does insure Henry Hardesty against loss." It is nowhere said that the company insures his heirs, executors, administrators or assigns. The contract was wholly personal with him. The loss, therefore, cannot be paid to any one other than Henry Hardesty. *Hine* v. *Woolworth*, 93 N. Y. 75.

The policy further says: "And the said company agrees to make good unto the said assured, his executors, administrators and assigns, all such immediate loss or damage not exceeding in amount the sum or sums insured, * * * nor the interest of the assured in the property, as shall happen by fire," etc. This clause is not a covenant of insurance, but a designation of the person to whom, in case of loss, the money shall be paid, namely, to the assured, Henry Hardesty; and if he shall have died after the policy became a claim, to-wit, when the fire took place, then the money, having become payable to him and he being dead, shall be paid to his executors or administrators, or, if the claim, after loss, had been assigned to him, then to his assignee. *Hine* v. *Woolworth*, 93 N. Y. 75.

The policy further provides that "if any change takes place in the title, possession or interest of the assured in the above mentioned property, or if this policy shall be assigned without the consent of the secretary endorsed thereon, then in each and every such case this policy shall be void." By the death of the insured he lost all title to, possession of or interest in the property. It is

true this change was not, by alienation, the act of the assured. It was doubtless a change brought about against his will; but death caused the change of title as fully as the owner's own act could have done. The policy was therefore void. 1 Biddle on Insurance, sec. 212, p. 207; *Miller* v. *Insurance Co.* 54 Ill.App. 53; Wood on Fire Insurance, (1st ed.) 319, and note; Ostrander on Fire Insurance, 239-241; 1 Arnold on Insurance, 146, and note; 1 Phillips on Insurance, 219; 2 Cuer on Insurance, sec. 24; 4 Wait's Actions and Defenses, 53; *Wyman* v. *Wyman*, 26 N. Y. 253; *Sherwood* v. *Insurance Co.* 73 id. 447; *Lappin* v. *Insurance Co.* 58 Barb. 325.

A. M. WILSON, and STELLE, WALKER & CROSS, for appellee:

The purpose of obtaining a policy of insurance is indemnity. *Insurance Co.* v. *Hoffman*, 31 Ill. App. 205; Phillips on Insurance, sec. 124.

A policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure. *Healey* v. *Accident Ass.* 133 Ill. 561.

As the insurance company prepares the contract and embodies in it such conditions as it deems proper, it is in duty bound to use language so plain and clear that the insured cannot mistake or be misled as to the burden and duties imposed upon him. *Insurance Co.* v. *Robinson*, 64 Ill. 265; *Insurance Co.* v. *Scammon*, 100 id. 644; *Schroeder* v. *Insurance Co.* 109 id. 157; *Healey* v. *Accident Ass.* 133 id. 556; *Insurance Co.* v. *Froebel*, 31 Ill. App. 295; 1 Wood on Insurance, 140.

The words, "and the said company agrees to make good unto the said assured, his executors, administrators and assigns, all such immediate loss or damage," etc., are in the policy and must be given some meaning. It will not do to say that those words can only refer to a loss

occurring before the assured's death, because the executors or administrators would have such right without the use of such words. The only effect that can properly be given to those words is, that in case of loss after the death of the assured the loss shall be paid (as stated in the policy) to his executor or administrator. *Richardson* v. *Insurance Co.* 89 Ky. 571; *Miller* v. *Insurance Co.* 54 Ill. App. 53; *Insurance Co.* v. *Kinnear,* 28 Gratt. 88; *Burbank* v. *Insurance Co.* 24 N. H. 550.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The policy of insurance in this case contains, among other conditions, the following condition: "If any change takes place in the title, possession, or interest of the assured in the above mentioned property, * * * this policy shall be void." The insurance company agrees to make good the loss during a period of five years from January 21, 1892, to January 21, 1897. The assured, Henry Hardesty, died on April 16, 1894, and the fire, which destroyed the dwelling houses, occurred on November 28, 1895. The death of the assured and the loss both occurred within the five years. The loss of the property by fire occurred, however, after the death of the assured. Upon this statement of facts the appellant contends, that the death of the assured, thus occurring before the loss, worked such a change of title and possession in the property insured, as to make the policy of insurance void; and that, therefore, the appellant is not liable in this action.

The contention of the appellant assumes that the words, "change of title," as used in the policy, refer to and include the involuntary change of title caused by the death of the assured. The question, therefore, to be determined is whether, under the language of this policy and the facts of this case, the death of the assured caused such a change of title in the property insured, as to make the policy void.

Those portions of the clause, in which the condition, containing the words, "change of title," occurs, refer to voluntary acts on the part of the assured himself. The policy is to be void if the assured obtains other insurance without the consent of the company. The policy is to be void, if the buildings are used for other purposes than those mentioned therein, or are allowed to become vacant or unoccupied. The policy is to be void, if the risk is increased by the erection of adjacent buildings, or by any other means whatever. The policy is to be void, if any encumbrance is placed upon the property without the consent of the company, or if the policy is assigned without such consent, or if foreclosure proceedings are commenced, or if the assured fails to make known any facts material to the risk. All the acts specified in these various conditions are such acts, as may or may not be done or caused by the assured party or parties, or may or may not be omitted or refrained from by such party or parties. If the condition in question be construed with reference to and in connection with the other conditions, it would seem to follow that forfeiture was to be worked by some voluntary act of the assured.

The condition, which provides that, if any change takes place in the title of the assured, the policy shall be void, is a condition which provides for a forfeiture. In other words, the assured party is to submit to a forfeiture of his right of action, if any change takes place in the title. It is a well settled rule, that forfeitures are not favored either in equity or in law. Consequently, provisions for forfeiture are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. (*Webster* v. *Dwelling House Ins. Co.* 53 Ohio St. 558). It would seem to be unjust and inequitable, that a forfeiture should be enforced because of an act for which the assured is not responsible, and which is in no way his fault. It would be proper to hold the assured responsible for any act of forfeiture which is

within his control. There is no claim, here, that the death, which caused the change of title, was the result of suicide, or of any improper conduct on the part of the assured.

The change in title by death of the assured does not seem to have been contemplated by either party to the contract of insurance. Hence, although the words "change of title" may be broad enough to include the change worked by death, yet the assured will not be bound by such construction. In *Bailey* v. *DeCrispigny*, L. R. 4 Q. B. 185, it was said: "Where the event is of such a character that it cannot reasonably be supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by general words, which, though large enough to include, were not used with reference to the possibility of the particular contingency which afterwards happens."

Whether or not the words, "change of title," as used in this policy, refer to a voluntary act on the part of the assured, or to an involuntary act like death, is, to say the least, a matter of doubt, and involves a question of doubtful construction. Where the words in a contract of insurance are so framed as to leave room for construction, the courts are inclined to lean against that construction, which will impair the indemnity of the assured. If the clause in a policy is susceptible of two interpretations, that one will be adopted, which is most favorable to the assured, in order to indemnify him for the loss which he has sustained. (*Illinois Mutual Ins. Co.* v. *Hoffman*, 31 Ill. App. 295). In *Commercial Ins. Co.* v. *Robinson*, 64 Ill. 265, we said: "Equivocal expressions in a policy of insurance, whereby it is sought to narrow the range of the obligations these companies profess to assume, are to be interpreted most strongly against the company." (*Niagara Fire Ins. Co.* v. *Scammon*, 100 Ill. 644; *Schroeder* v. *Trade Ins. Co.* 109 id. 157). "The predominant intention of the parties in a contract of insurance is indemnity, and this intention is to be kept in view and favored in

putting a construction upon the policy." (1 Phillips on Insurance, sec. 124). Hence, the contract is always to be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity. (*Healey* v. *Mutual Accident Ass.* 133 Ill. 556). "It is a rule of law, as well as of ethics, that, when the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense, in which he had reason to suppose it was understood by the promisee." (*Hoffman* v. *Ætna Ins. Co.* 32 N. Y. 413). These rules of construction are applied to provisions and conditions in policies of insurance, because such policies are prepared by the companies themselves, and the language, in which they express their obligations and limit their liabilities, is selected by them, and not by the insured parties. (*Commercial Ins. Co.* v. *Robinson, supra; Webster* v. *Dwelling House Ins. Co. supra*).

It is said, however, by the appellant that the policy here in question insured Henry Hardesty only, and not his executors and administrators; and that, therefore, inasmuch as the loss occurred after his death, his administrator has no right to sue for a recovery of the amount of the loss. By the terms of the policy, the company agrees to "make good unto the said assured, his executors, administrators, and assigns, all such immediate loss or damage * * * as shall happen by fire * * * from the twenty-first day of January, 1892, at noon, to the twenty-first day of January, 1897, at noon." Here certainly is an agreement to make the loss good, not only to the assured, but also to his "executors, administrators, and assigns;" and not only so, but to make it good for the whole period of five years, during which both the death and the loss occurred. It is true that the policy does not say, in so many words, that the company insures Henry Hardesty and his executors, administrators, and assigns, but the clause, which contains the agreement to make the loss good to the latter is so intimately connected

with the prior clause which insures Henry Hardesty, that the two clauses must be construed together. If the first clause is to stand entirely alone, then it fails to specify any time, during which the insurance is to run. The words, specifying the period of five years, are used in connection with the clause containing the words "executors, administrators, and assigns," but must also be held to apply to the earlier clause.

The construction insisted upon by the appellant is, that, in case the loss had happened before the death of Henry Hardesty, the right of action would survive to his executors and administrators, but that, the loss having occurred after his death, there was no right of action in his administrator. We are unable to concur in this view. The company agrees to make good the loss to the insured and his executors and administrators during a period of five years, irrespective of the question whether the loss should occur before or after the death of the assured. The plain meaning of the policy justifies the present action by the administrator. If the reference was only to the loss which should occur during the life of the assured, the use of the words "executors and administrators" would be unnecessary, as, in such case, the administrator would have a right of action under the law, and independently of any provision in the policy. The clauses of this policy are evidently framed so as to preserve the interests of the company, and yet not one of them refers to any such contingency as the death of the assured, except so far as may be inferred from the use of the words "executors and administrators." As the company agrees to make good the loss during five years to the executors and administrators, as well as to the assured, it must be held to be liable to such administrator as there might be during the period of five years. No administrator could be appointed during that period, unless the deceased had died during that time, and no loss could be made good during that time, unless such loss occurred during that time.

We are aware, that there is some conflict of authority on this question in the decisions of the courts; but we prefer to follow those authorities, which are in harmony with the view above expressed, that is, that the death of the insured under the language of the policy here does not work such change of title as to make the policy void.

In *Georgia Home Ins. Co.* v. *Kinnier*, 28 Gratt. 88, the second condition in a policy of insurance was as follows: "And if the title of the property is transferred or changed, and the policy is assigned without written permission hereon, the policy shall be void;" and in construing that condition the court of appeals of Virginia said: "The third instruction refers to condition two. The court gave it with the construction, that the change interdicted by the condition was not intended to include devolution of title upon the heirs by the death of the assured. In this surely there was no error. By the change of title provided against in the condition, must have been intended a voluntary disposition or alienation of the property. It could not have been intended to embrace all kinds of transfer of title.  *  *  *  It is to the last degree unreasonable to suppose, that any sane man would ever accept a policy of insurance against loss by fire, if he understood it, which contained a provision for immediate forfeiture by reason of his death and consequent descent of title to his heirs." (*Burbank* v. *Rockingham Mutual Fire Ins. Co.* 24 N. H. 550).

In *Richardson* v. *German Ins. Co. of Freeport*, 89 Ky. 571, the action was upon a policy of insurance against loss by fire, which was almost identical in its terms and provisions with the policy in this case. The assured died; and the principal question was, whether the policy became void by reason of the death of the assured, which occurred before the destruction of the property. In that case, the court of appeals of Kentucky held, that a forfeiting clause in a contract of insurance should never defeat a right previously agreed upon and provided for, unless the lan-

guage, strictly interpreted, requires it; that a policy of fire insurance does not become void on the death of the assured; that a provision in the policy, that it shall become void "if any change takes place in the title," does not apply to such a case as is shown by the undertaking of the company to make good the loss to the "assured, his executors, administrators, and assigns." In the opinion of the court in the Kentucky case it was said, that, by the language used, the property was insured for a specified period of time; and that the company "agreed in express terms to make good unto, not merely the insured himself, but as well his executors, administrators and assigns, the immediate loss or damage that might happen to the property at any time during that period, whether before or after his death; and, therefore, to treat that event as *ipso facto*, a termination of the policy and liability under it, would be contrary to the express terms of it, render the stipulation for payment to the personal representative of the insured superfluous, and allow the company to retain the full consideration paid, while being held to only part performance of its agreement." The court there further said, that the clause, "or any change takes place in the title, use, or occupation or possession thereof whatsoever," "does not necessarily or properly refer to a change unavoidably resulting from his death, but rather to such as might be caused or suffered by act of the assured while living." In that case also the court of appeals of Kentucky refused to follow the cases of *Sherwood* v. *Agricultural Ins. Co.* 73 N. Y. 447, and *Wyman* v. *Wyman*, 26 id. 253. Counsel for the appellant press upon our attention the reasoning of the Court of Appeals of New York in two cases decided in that State upon this subject. The doctrine of these New York cases has been referred to with approval in a number of text-books upon insurance, and our attention is also called to the language of these text-books. The principal New York cases thus referred to are *Sherwood* v. *Agricultural Ins. Co.*,

*supra*, and *Matter of Hine* v. *Woolworth*, 93 N. Y. 75. A reference to these two cases will show, that the conditions in the policies there, which provided for a forfeiture in case there should be a change of title, contained the words, "by operation of law." In the *Sherwood case* the condition was as follows: "If  *  *  *  the said property shall be sold or conveyed, or the interest of the parties therein be changed in any manner, whether by act of the parties or by operation of law;  *  *  *  this policy shall be null and void." In the *Woolworth case*, the court says: "The policy contained a condition that, if the property insured should be sold or conveyed, or if the interest of the insured therein shall be changed in any manner, whether by act of the insured or by operation of law, the policy should be null and void," etc. The two New York cases, thus mainly relied upon, are distinguishable from the case at bar by the use of the words "by operation of law" in the policies, because those words necessarily refer to a change of title resulting from the operation of the Statute of Descents by reason of the death of the assured party. So far as the views of the New York cases go beyond the language of the policies, as thus indicated, and are opposed to the views expressed in the Virginia and Kentucky cases, we are not disposed to adopt them. So far as the case of *Wyman* v. *Wyman, supra*, is concerned, the condition there was against a transfer of the interest of the assured in the policy, and not against a change of interest in the property insured; and the decision of the court was based upon that distinction. (*Sherwood* v. *Agricultural Ins. Co. supra*). In reference to the case of *Lappin* v. *Charter Oak Fire and Marine Ins. Co.* 58 Barb. 325, it may be said, that the decision in that case was not rendered by a court of last resort, and is based largely upon the decision of the New York court of appeals in *Wyman* v. *Wyman, supra*, which the lower court felt itself bound to follow.

Our conclusion is, that the death of Henry Hardesty on April 16, 1894, more than a year before the fire occurred which destroyed the property insured, did not, under the facts of this case and under the provisions of the policy here sued upon, work such a change of title and possession in the property insured, as to make the policy void; and that the decisions of the lower courts are correct.

Accordingly, the judgment of the Appellate Court is affirmed.

                                                *Judgment affirmed.*