Gold, Admx., *v.* Commercial Casualty Insurance Company, Appellant.

Argued October 16, 1936. Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Felice E. Darkow,* with her *Langdon W. Harris, Jr.,* of *Herman & Harris,* for appellant.

*Albert L. Moise,* for appellee.

Opinion by Stadtfeld, J., December 11, 1936:

This was an action brought by Rae L. Gold, administratrix of the Estate of Morris Gold, the assured, against the defendant, Commercial Casualty Insurance

Company, on a policy of theft insurance which covered the assured to the amount of $500 for loss by burglary, robbery, theft, or larceny of "watches, precious, or semi-precious stones, jewelry ...... owned by the assured or by any permanent members of the household of the assured who does not pay board or rent" for the term of one year, beginning January 6, 1933. By renewal certificate issued by the company, the term was extended to January 6, 1935.

The assured died on July 27, 1934. Some time between the date of his death and August 4, 1934, certain valuables, consisting of gold watches, gold chains, and a gold signet ring of the assured, and other valuables consisting of a lady's gold watch and chain and a yellow gold diamond ring belonging to Bessie Gold, his wife, and a lady's gold wrist watch belonging to Mollie Gold, one of the daughters, disappeared.

The usual proofs of loss were filed with the company, and letters of administration were subsequently taken out. A check for the unearned premium was offered to the administratrix of the assured, and on February 3 and 4, 1936, the case was tried before GLASS, J., without a jury. The court, after hearing the evidence, found in favor of the plaintiff in the sum of $378.56. On March 13, 1936, defendant's motion for judgment n. o. v. was dismissed by the court en banc and judgment was entered for plaintiff, CRANE, J., dissenting. From the dismissal of this motion and the entry of judgment in favor of plaintiff, this appeal has been taken.

The sole question here is whether the benefits of this policy extend beyond the death of the assured. Appellant quotes and relies upon the "no assignment" clause in the policy, which reads as follows: "P. No assignment under this policy shall bind the company unless its consent shall be endorsed hereon." From this it is argued that the policy contract was made with Morris Gold individually and terminated with his

death. Appellee contends that the above clause has no application to the present case. There was no sale of the insured property by Morris Gold or his wife and daughter. No assignment of the policy is involved in this case. Devolution of title to property at the death of the owner, is clearly distinguished from a sale or transfer of the insured property by the owner. The distinction is clearly and concisely set forth by JUNKIN, P. J. in *Columbia Insurance Co. v. Mullin,* 4 Leg. Opinion, 572 (1870) in the following language: "...... devolution is the act of the law, alienation is the act of the insured; the former takes place without, the latter by his consent."

In 6 Couch Cyclopedia of Insurance Law, p. 4871, sec. 1351, it is stated: "...... the authorities are agreed that a policy of insurance on property is not terminated by the death of the insured, in the absence of an express provision to that effect in the policy, the usual ground for the decision being that, since insurance policies usually contain explicit provisions as to termination or forfeiture, no additional grounds therefor will be implied or read into the contract, and a provision that alienation shall avoid the policy does not apply to a transfer by operation of law resulting from the death of the insured." Likewise in 3 Cooley's Briefs on Insurance (2d Ed.) p. 2699, it is stated: "A policy conditioned to be void on the alienation or transfer of the property is not terminated by the death of the insured and the descent of the property to the heirs."

Also in 16 A. L. R. 310 (annotation) (1922), we find it stated: "The cases are in accord in holding that a policy of insurance on property is not terminated by the death of the insured, in the absence of an express provision to that effect in the policy, the ruling being ordinarily put on the ground that, since insurance policies usually contain explicit provisions as to termi-

nation or forfeiture, no additional grounds therefor will be implied."

In *Brams v. New York Life Insurance Co.*, 299 Pa. 11 (1930), 148 A. 855, our Supereme Court, through Mr. Justice SADLER said at p. 13: "The correctness of the conclusion reached depends upon the construction of the terms of the written contract, having in mind that, in case of doubt or ambiguity, its provisions will be viewed in the light most favorable to the insured, since, if possible, in such cases, an interpretation which would work a forfeiture must be avoided: *Stipcich v. Metropolitan Life Ins. Co.*, 277 U. S. 311; *McMaster v. New York Life Ins. Co.*, 183 U. S. 25." Likewise, in *Scheel v. German American Ins. Co.*, 228 Pa. 44 (1910), 76 A. 507, the same court, through Mr. Justice MES-TREZAT said at p. 48: "A policy of fire insurance is a contract of indemnity, and unless it is canceled by mutual consent, or the policy provides that it may be terminated on the option of the parties and is so terminated, it will continue in force for the term for which it was written. ......"

Our own court, in *Hubbard v. Globe Indemnity Co.*, 87 Pa. Superior Ct., 483, through Judge HENDERSON said at pp. 487, 488: "It is a familiar principle that insurance policies should have a reasonable construction in view of the intent of the parties, regard being had to the nature and situation of the thing insured, and as the policy of insurance is the language of the company insuring, if there be any ambiguity, it is taken most strongly against the insurer, and if reasonably susceptible of two interpretations, it is to be construed in favor of the insured so as not to defeat without necessity his claim to indemnity."

In *Forest City Fire Insurance Co. v. Hardesty*, 182 Ill. 39, 45, it was said: "It would seem to be unjust and inequitable that a forfeiture should be enforced because of an act for which the assured is not responsible and which is in no way his fault. It would be proper

to hold the assured responsible for any act of forfeiture which is within his control. There is no claim here that the death which caused the change of title was the result of suicide or of any improper conduct on the part of the assured."

In *Georgia Home Ins. Co. v. Kinnier's Adm'x.*, 28 Grattan, 88 (1876), BURKS, J., delivering the opinion of the Court of Appeals said, at p. 111: "Moreover, it is to the last degree unreasonable to suppose that any sane man would ever accept a policy of insurance against loss by fire, if he understood it, which contained a provision for immediate forfeiture by reason of his death and consequent descent of title to his heirs."

In *Planters' Mutual Ins. Asso. of Arkansas v. Dewberry*, 69 Arkansas 295 (1901), HUGHES, J., delivering the opinion of the court said, at p. 300: "While there is a conflict in the decided cases upon the question involved in the first instruction,—that is, that the title to the property was changed by the death of R. A. Dewberry after the execution of the policy, and the descent of the property insured to his wife and children, —we incline to the opinion that the more reasonable view is that the title to the property was not changed by the death of R. A. Dewberry and the succession of his wife and children to his rights therein, within the meaning of the policy. We think this view amply supported by the decisions. *Richardson v. German Ins. Co.*, 89 Ky. 571; *Burbank v. Rockingham*, 24 N. H. 550; *Forest City Ins. Co. v. Hardesty*, 182 Ill. 39; *Georgia Home Ins. Co. v. Kinnier*, 28 Grat. 88."

In *Zimmerman v. Massachusetts Bonding & Ins. Co.*, 194 New York Supplement, 482 (1922), SMITH, J., delivering the opinion of the court said at p. 483: "The action is brought upon two policies of burglary insurance, identical in form, but of different amounts and dates. Both policies cover the time in question, when it is claimed that the loss occurred. Unless the policies have been cancelled, or have become ineffective by the

death of Mark Samuels, who was named in the policies as the person insured, the policies were still in force at the time of the burglary. It is not necessary here to determine whether the death of Mark Samuels cancelled the policies. Authorities in other states hold to the contrary. *Hardesty v. Forest City Ins. Co.,* 77 Ill. App. 413, aff'd. 182 Ill. 39, 55 N. E. 139, 74 Am. St. Rep. 161; *Burbank v. Rockingham Mutual Fire Ins. Co.,* 24 N. H. 550, 57 Am. Dec. 300; *Westchester F. Ins. Co. v. Dodge,* 44 Mich. 420, 6 N. W. 865; *Pfister v. Gerwig,* 122 Ind. 567, 23 N. E. 1041; *Georgia Home Ins. Co. v. Kinnier's Adm'x.* 28 Grat. (Va.) 88. The cases upon which the defendant relies in this state are *Hine v. Woolworth,* 93 N. Y. 75, 45 Am. Rep. 176, and *Sherwood v. Agricultural Insurance Co.* 73 N. Y. 447, 29 Am. Rep. 180, which were decided upon policies which are clearly distinguishable from the policies here in question, inasmuch as those policies contained provisions that the policy shall be void if the interest in the property is transferred 'by operation of law', which would include the passing of the title upon the decease of the party insured. No such provision is contained in the policies in question. The policies were written by defendant. The time covered by the policies was one year from date. That time had not expired. It would seem, if it had been the intention to limit liability to the lifetime of the insured, that the policies would have so stated."

In *Forest City Insurance Co. v. Eaton,* 86 Ill. App. 463, it was held that the death of the assured before loss does not work a forfeiture of a fire insurance policy under a condition that it shall be void if any change takes place in the title or possession of the property insured.

Without unduly lengthening this opinion, we may say that the judgment of the lower court is correct both as to principle and the authorities cited, which

are in consonance with the policy announced by our appellate courts.

The assignments of error are overruled and judgment affirmed.