Argued January 2, affirmed January 15, 1918.

# KENDALL v. TRAVELERS' PROTECTIVE ASSOCIATION.*

### (169 Pac. 751.)

**Insurance—Accidents—Admissibility of Evidence.**

1. In action on a policy insuring against accidents causing disability to transact business, testimony regarding plaintiff's suffering, etc., is inadmissible.

**Insurance—Fraternal Benefit Insurance—Instructions.**

2. In action on a benefit accident policy, refusing requested instructions that defendant's constitution and by-laws were binding upon plaintiff, *held* erroneous.

**Insurance—Accident Policy—Pleading.**

3. Plaintiff's allegation that he had complied with all terms of an accident insurance policy, *held* sufficient under the direct provisions of Section 88, L. O. L.

**Insurance—Accident Policy—Departure—Pleading.**

4. Where plaintiff's allegation that he had complied with all provisions of an insurance policy was denied by an answer stating the required notice was not given, plaintiff's reply that such failure was excused by his physical disability, etc., *held* not a departure.

**Insurance—Accident Policy—Time to Give Notice.**

5. An accident policy requiring notice of injury within thirty days, unless insured was unconscious or disabled, is not breached by insured's failure to give such notice during some seven days following the accident, before plaintiff became physically disabled.

> [As to notice of accident within time required by terms of accident insurance policy as condition precedent to recovery, see note in Ann. Cas. 1914D, 412.]

**Insurance—Accident Policy—Requested Instruction.**

6. In action on a fraternal accident policy, defendant's requested instruction that plaintiff was bound by its constitution and by-laws although he and his family were ignorant thereof, was properly refused because of the reference to plaintiff's family.

**Insurance—Accident Policy—Jury Question.**

7. Evidence regarding the manner in which a barber removed an ingrowing hair from plaintiff's face, with his consent, resulting in

---

*As to what constitutes external and visible signs of injury within exemption provisions of accident policy, see note in 49 L. R. A. (N. S.) 1022.

On effect of undevelopment of injury as affecting time for giving the notice required by an accident insurance policy, see note in 14 L. R. A. (N. S.) 503.

poisoning, etc., *held* to make a jury question whether the injury was accidental within a fraternal benefit policy.

**Insurance—Accident Policy—"Accidental Means."**

8. A wound intentionally made by a barber in removing an in-growing hair from plaintiff's face, with his consent, *held* not made by "accidental means" within a fraternal benefit policy.

**Insurance—Accident Policy—Time to Sue.**

9. Where a fraternal benefit association's constitution required claims to be presented after total recovery, and authorized benefits for 2 years' disability, a suit for 32 months' disability, commenced 7 months after refusal of the claim, *held* brought in time, although the constitution required suit to be brought within 6 months after the claim's refusal.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

It is alleged and admitted that the defendant is a corporation engaged in fraternal insurance business and at the time of happenings named in the complaint the plaintiff was a member in good standing thereof. He avers:

"That on or about the thirteenth day of November, 1914, a barber, while endeavoring to remove some in-growing hairs, accidentally penetrated or broke the skin on the point of plaintiff's chin, thereby causing an open wound, into which an infection was introduced, as a result of which plaintiff became ill and was incapacitated and wholly disabled for transacting any business for a period of thirty-one weeks and six days, and was partially disabled thereafter for a period of one week and one day."

He states also that, according to the constitution and by-laws of the defendant, the rate of indemnity for total disability is twenty-five dollars a week, and for partial disability, twelve dollars and a half per week. Stating that he has performed all the conditions on his part to be fulfilled to obtain the indemnity which the defendant has refused to pay, he demands judgment for $810.70. The quoted allegations about the

injury and the performance of the stipulations by the plaintiff are denied.   The rates of indemnity are admitted.

Three affirmative defenses are set up.   The first is in this language:

"That the injuries described in the complaint were voluntarily inflicted upon the plaintiff by himself through the barber referred to in paragraph III of the complaint, who acted at the instance of plaintiff, and who acted intentionally; that the removal of the ingrowing hair from the plaintiff's chin, as alleged in the third paragraph of the complaint, was not a violent or accidental act; that on the contrary it was intentional and with the consent of plaintiff; that the disability relied upon as the ground of plaintiff's cause of action resulted from infection and the infection was not introduced into, by, and through an open wound caused by violent or accidental means; that the removal of the ingrowing hair referred to in the third paragraph of the complaint was surgical treatment, although plaintiff elected to have the same done by a barber.   That plaintiff's injuries were not wholly or at all due to accident, but were wholly due to bodily infirmity, disease, poison, infection and the voluntary act of plaintiff and the barber referred to in the complaint."

The second is to the effect that although not unconscious or physically unable to do so, the plaintiff did not give the defendant any information of his injury until more than thirty days thereafter, notwithstanding the rules of the institution required that notice be given within that period under such circumstances. The third is in substance that it was agreed that no action against the defendant for the recovery of any claim arising under the certificate of membership or the constitution and by-laws shall be sustained unless commenced within six months after the refusal of the defendant to pay the same, and that although the defendant refused to pay the plaintiff's demand of all of

which the latter received notice not later than January 21, 1915, this action was not commenced until August 28th of that year. All these defenses are prefaced by the admitted allegations to the effect that the defendant is a fraternal insurance society, the constitution and by-laws of which are binding upon its members, and that the plaintiff stipulated that he would comply with all their regulations and accept the same as clearly defining the rights and obligations incident to his membership. These are accompanied by certain conceded excerpts from the constitution of the defendant, which are more fully set forth in the opinion. Otherwise the answers are denied.

Further replying and excusing his failure to give notice within thirty days after the accident the plaintiff avers that immediately after its occurrence he became unconscious and physically unable to communicate with the defendant and so continued a long time after the date of the first notice which was given for him by his son on December 22, 1914.

The case was heard by a jury and the result was a verdict and judgment for the plaintiff which the court set aside and granted a new trial. From this last order the plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Wilbur Henderson, Messrs. Davis & Farrell* and *Mr. E. K. Oppenheimer,* with oral arguments by *Mr. Henderson* and *Mr. Wilfred E. Farrell.*

For respondent there was a brief over the names of *Mr. W. Lair Thompson, Messrs. Snow & McCamant* and *Mr. MacCormac Snow,* with an oral argument by *Mr. Thompson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The constitution and by-laws of the defendant which confessedly affect this case read thus:

### "Article IX.

"Sec. 3.   Whenever a member of this Association in good standing shall, through external, violent and accidental means, receive bodily injuries which shall independently of all other causes immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation as shown by the records of this Association, he shall be paid for the loss of time occasioned thereby the sum of $25.00 per week, not exceeding one hundred and four consecutive weeks, and $12.50 per week for partial disability.

"Sec. 7.   All claims for benefits or indemnity under the benefit certificate of a member in good standing and this Constitution must be made to the National Board of Directors.   Such claims are not divisible and must be presented after the total recovery of the member.

"Sec. 8.   Any member in good standing meeting with any accident, as described in this article, must notify the National Secretary in writing within thirty days, giving full particulars of same and name of attending physician.   In case of death the beneficiary shall give such notice within thirty days.   In case of failure to notify, except because of unconsciousness or physical inability, the member or his beneficiary in case of death shall forfeit all rights to insurance benefits. * * The forwarding of blanks for the purpose of proofs as above provided or the investigation of any claim by any one authorized to represent the Association or the holding of an autopsy under the direction of the Association shall not constitute or be a waiver of any right or of any defense which the Association may have against any claim made against it.

"Sec. 9.   No action against this Association for the recovery of any claim arising under the certificate of membership or the Constitution and By-Laws shall be

sustained unless commenced within six months after the refusal of the Association to pay the same and a lapse of such period shall be conclusive evidence against the validity of such claim asserted if an action for its enforcement be subsequently commenced.

"Sec. 12. None of the officers, directors, or members of this Association, and no State Division or local Post or any officer thereof, shall have the power or authority to waive any of the provisions of the Charter, Constitution or By-Laws of this Association, nor to adopt any rule or provision in connection therewith, except as herein provided. The Charter, Constitution and By-Laws, with all amendments thereto, shall be binding upon the Association and on each and every member thereof, and on all beneficiaries of members."

"Article X.

"Sec. 2. This Association shall not be liable in case of injury, fatal or otherwise, inflicted by a member in good standing on himself, or in case of * * death or disability when caused wholly or in part by any bodily or mental infirmity or disease or by intentional injuries causing death or disability inflicted by the member, or any other person, upon him * * or injury, fatal or otherwise, resulting from any poison or infection (unless the infection is introduced into, by, or through an open wound, which open wound must be caused by external, violent, and accidental means and be visible to the naked eye) * * or disability resulting from medical or surgical treatment * * nor shall the Association be liable in any case where the injury or death is not caused by external, violent, and accidental means independently of all other causes and is not the sole or proximate cause of the death or disability."

1. One matter to be determined is whether the plaintiff was wholly disabled from transacting any and every kind of business pertaining to his occupation. The matter in dispute is one of cold contract and is not one of damages involving degrees of suffering. Notwithstanding this, over the objections of the defendant, the

plaintiff by his counsel persistently went into extreme details, relating the different surgical operations performed upon him during his sickness, the suppuration of the wounds, all his suffering and his present condition. His case could have been proved in that respect by the simple statement that he was unable to pursue his occupation for the length of time stated. If he had been painlessly paralyzed by an accident within the meaning of his certificate of membership to the extent that it would have wholly prevented him from transacting his business, he would have been entitled to recover so far as that branch of the case was concerned. The amount or intensity of his suffering was immaterial. It could not add to nor take from the amount of his recovery if he was entitled to recover at all. The only effect its recital could have would be to prejudice the jury in its consideration of the issues involved. The admission of this testimony was one of the grounds of the defendant's motion for a new trial. On that basis alone the court was right in setting aside the judgment.

2. In view of the probability of a new trial, however, it becomes necessary to consider the other assignments of error mentioned in the motion. These are predicated upon the refusal of the court to give the instructions requested by the defendant. The first of these, being a peremptory instruction to find for the defendant, we will pass without further comment. The second reads thus:

"It is admitted in the pleadings that the defendant is a fraternal insurance corporation or association and that the plaintiff was in good standing in this Association on the 13th of November, 1914. The pleadings also admit a number of the provisions contained in the constitution and by-laws of the defendant. The jury is instructed that all of these provisions contained in the

constitution and by-laws of the defendant corporation and alleged in the answer of the defendant are binding upon the plaintiff and plaintiff can only recover in this case by showing that under the terms and conditions contained in the constitution and by-laws of the defendant plaintiff is entitled to recover."

This instruction contains a general statement of the principles governing a recovery by the plaintiff and should have been given to the jury.

3–5. The third is as follows:

"It is provided in the constitution of the defendant that any member claiming a right to recover for an accident sustained by him must notify the National Secretary of the defendant within thirty days. The failure to give the notice within this time may be excused by unconsciousness or physical inability on the part of the member. The jury is instructed that the unconsciousness or physical inability referred to in the constitution of the defendant which will excuse giving notice within thirty days is an unconsciousness or physical inability which continues during the entire thirty days, or during the period elapsing between the discovery by plaintiff that his injury was material and the expiration of said thirty day period. If therefore you find from the evidence that on the evening of the 13th of November, 1914, the plaintiff suffered pain as the result of the abrasion of his skin on that day and that the sore got worse on the following days and that at some later time from three to seven days after the incident of which he complains plaintiff regarded the sore as sufficiently serious to justify calling a physician and that up to the time when plaintiff first consulted a physician he was conscious and able to write, or able to request someone else to write to the defendant, and that as a matter of fact no notice was given to the defendant of the incident until more than thirty days subsequent to the 13th of November, 1914, then I instruct you that plaintiff cannot recover and your verdict should be for the defendant."

In our judgment the plaintiff was entitled to full thirty days within which to inform the defendant of his injury and a notification on the thirtieth day of such a period next ensuing after the accident, during all of which he was conscious and able, would have been in ample time. The forfeiture clause respecting failure to notify contains the exception "because of unconsciousness or physical inability." The manifest object of this qualification is to extend the time rather than to shorten it. Manifestly it was not the design of the contracting parties to impose upon one who was in fact unable to give it, greater promptness of notice than upon one who was at all times able to notify the insurer. The plaintiff was entitled to rely upon his allegation in the complaint that he had performed all the conditions of the contract on his part: Section 88, L. O. L. When this was challenged by the defendant's answer to the effect that the plaintiff had not given notice until more than thirty days after the injury he was entitled to rest in his reply upon the exception of unconsciousness or inability to notify the defendant. This is not a departure, but rather an affirmance of the general allegation of the complaint to the effect that he had observed the stipulation on his part.

The authorities cited in support of the contention of the defendant on this point are without exception those where the injured person is required either to give immediate notice or within a certain time, without any qualification whatever for unconsciousness or inability as allowed in the instant case. For instance, in *Hatch v. United States Casualty Co.*, 197 Mass. 101 (83 N. E. 398, 125 Am. St. Rep. 332, 14 Ann. Cas. 290, 14 L. R. A. (N. S.) 503), the policy required a notice within ten days of the event causing the injury. The decedent fell on July 7th, but thought nothing of it and gave no

notice. He became ill August 7th and died on the eleventh of that month, after which his beneficiaries gave notice of the event happening more than a month before. It was properly held that there was a failure to comply with the contract in that respect. So, in *Northwestern Telephone Co.* v. *Maryland Casualty Co.,* 86 Minn. 467 (90 N. W. 1110), the policy required immediate notice of the accident where the claimant had taken insurance against liability for injuries to its employees. Through its foreman, the plaintiff there had notice of the accident at the time it happened but not until the employee sued it about a year afterwards did it inform the insurer. Under these circumstances it failed in its action against the Casualty Company. *Travelers' Ins. Co.* v. *Myers,* 62 Ohio St. 529 (57 N. E. 458, 49 L. R. A. 760), *Travelers' Ins. Co.* v. *Nax,* 142 Fed. 653 (73 C. C. A. 649), and *Heywood* v. *Maine Mutual Assn.,* 85 Me. 289 (27 Atl. 154), are all "immediate notice" cases without any qualification. In *Parker* v. *Farmers' Fire Ins. Co.,* 179 Mass. 528 (61 N. E. 215), a fire occurred October 3d. The policy required a sworn statement "forthwith to be rendered to the company." Four days after the fire, the insured went to visit a sick child. At intervals thereafter she was either sick herself or some one of her family was, and notice was not given until the 10th or 12th of December. This was held not to be in compliance with the stipulation. In that case, as well as in *United Benev. Soc.* v. *Freeman,* 111 Ga. 355 (36 S. E. 764), and *North American Accident Ins. Co.* v. *Watson,* 6 Ga. App. 193 (64 S. E. 693), there was no exception or qualification annexed to the time within which notice was required. In the case before us for consideration the exception is the saving grace for the plaintiff. There was evidence which the jury

was entitled to consider, respecting his unconsciousness and physical disability to give the notice until it was given for him after the expiration of the thirty-day period. The instruction requested, therefore, was properly refused, it being to the effect that if he was conscious at any time during the period of thirty days next following the alleged accident, he was bound to have given notice and was not excused by subsequent unconsciousness or disability happening within the remainder of the time.

6. The fourth instruction requested by the defendant is here set down:

"The jury is instructed that plaintiff was bound to know the contents of the constitution and by-laws of the defendant corporation and that he cannot excuse himself for failure to comply with the provisions contained in the constitution and by-laws by showing that he and the members of his family were in fact ignorant of their contents."

This instruction is clouded by the clause relating to the members of the plaintiff's family, which is not in conformity with the issues involved. It was properly refused.

7-9. The two remaining, five and six, are in these words:

"The jury is instructed that if plaintiff directed the barber to remove the ingrowing hairs from his chin and the barber proceeded to remove the hair under instructions from plaintiff, plaintiff cannot recover in this case, even though the work of the barber was unskilfully done and the results were such that neither the plaintiff nor barber anticipated."

"If the abrasion of plaintiff's chin was due to the intentional act of the barber in endeavoring to remove an ingrowing hair thereon plaintiff cannot recover and your verdict should be for the defendant."

We note that the defendant does not insure merely against injuries although they might constitute an unexpected effect. The damage, whether anticipated or not as a result, must have happened through accidental, violent and external means. All three of these ingredients must unite to form the cause of the subsequent hurt before there can be a recovery under the admitted terms laid down in the constitution and by-laws of the defendant. A man's leg might be broken by a runaway team coming suddenly upon him from behind. He might reasonably expect to be confined to his bed for some weeks and yet the cause of the fracture would be accidental. On the other hand, he might purposely inflict upon himself a slight pin scratch which would ordinarily pass unnoticed and septicaemia might ensue and unexpectedly amputation of the injured part might become necessary, yet the scratch would not be accidental. In other words, under such a policy as this the liability must be determined by causes rather than consequences.

It may be conceded that the injury inflicted by the barber's tweezers was external. We cannot stop to weigh and haggle about the degree of violence involved. The question to be determined is whether the cause of the injury was accidental and whether the instructions asked for should have been given. A brief allusion to the testimony about what happened in the barber-shop is here appropriate. Plaintiff gave a narration about going into the shop and taking the first chair and that the barber shaved him and cut his hair. In speaking of the barber, plaintiff stated:

"He said that there was a dead hair in my chin, and he went to work with his tweezers and took it out. At that time, at that moment, the towel-supply man was either coming in or going out. Anyway, he got

into an altercation with him just as he made the attempt to get the hair, and he looked up, and he jabbed those tweezers into the skin and took out quite a little piece of it with the tweezers, in attempting to get the hair."

On cross-examination he testified as follows:

"Q. How many ingrowing hairs were there on your chin?

"A. I don't know.

"Q. Did the barber remove those at your request?

"A. He called my attention to it and I requested him to.

"Q. He called your attention to the hair and you told him to pull it out?

"A. Yes, sir.

"Q. His effort in pulling it out was pursuant to your request?

"A. I requested him to, though he suggested it himself."

Again, in his final claim to the defendant, in describing the accident which caused the injury the plaintiff used this language:

"I asked barber to remove some ingrowing hairs from point of my chin. In doing so he produced a wound which became infected."

The barber was not produced as a witness. In the light of the issues framed by the pleadings, it became a question of fact for the jury to determine whether the means producing the injury was accidental or not. The jury might consider that it was impossible to perform the required operation without making some incision of the skin so as to reach the hair growing underneath, and that on that account the barber intentionally and with the implied consent at least of the plaintiff, made the cut which afterwards became infected. This would not be an unwarranted conclusion

from the plaintiff's own testimony. If, therefore, the wound was made intentionally it would not come within the meaning of the term "accidental means." Consequently the fifth and sixth instructions should have been given to the jury: *Stone* v. *Fidelity & Casualty Co.,* 133 Tenn. 672 (182 S. W. 252, Ann. Cas. 1917A, 86, L. R. A. 1916D, 536); *Carnes* v. *Iowa State Traveling Men's Assn.,* 106 Iowa, 281 (76 N. W. 683, 68 Am. St. Rep. 306); *Feder* v. *Iowa State Traveling Men's Assn.,* 107 Iowa, 538 (78 N. W. 252, 70 Am. St. Rep. 212, 43 L. R. A. 693); *Smouse* v. *Iowa State Traveling Men's Assn.,* 118 Iowa, 436 (92 N. W. 53); *Schmid* v. *Indiana Travelers' Acc. Assn.,* 42 Ind. App. 483 (85 N. E. 1032); *Lehman* v. *Great Western Acc. Assn.,* 155 Iowa, 737 (133 N. W. 752, 42 L. R. A. (N. S.) 562); *Hastings* v. *Travelers' Ins. Co.,* 190 Fed. 258; *Shanberg* v. *Fidelity & Casualty Co.,* 158 Fed. 1, 5 (85 C. C. A. 343, 19 L. R. A. (N. S.) 1206).

Nothing of similar import was given by the court in the charge to the jury which is here set down in full:

"You have been here for some little time. You have heard the testimony in this case and I will submit the case to you with the instruction that the jury are the exclusive judges of the facts. The defendant has requested me to give you certain instructions, numbered I to and including VI, each of which I decline to give. To the refusal to give each one of these instructions an exception is allowed. Nine of your number are sufficient to carry the verdict."

This disposes of all the assignments of error apparent in the bill of exceptions. Another matter discussed by both parties in their briefs and at the hearing was whether or not on the admitted facts the action was commenced in time. But for the fact that the question most likely will be urged again at the trial in the

Circuit Court, we might well ignore it on the record before us.   In view of the attitude of the parties themselves, however, we will determine it.   It is conceded in the reply that the plaintiff received a letter from the national secretary of the defendant dated January 16, 1915, stating that the directors could not entertain the plaintiff's claim and that the complaint herein was not filed until August 28, 1915.   It is admitted in evidence also that the letter alluded to was received by the plaintiff not later than January 21, 1915.   Six months from that date would expire July 21st of that year.   The following excerpt from *Switchmen's Union of North America* v. *Colehouse,* 227 Ill. 561 (81 N. E. 696), sets forth a well-established canon for the construction of contracts of the sort before us:

"The laws and rules of the appellant are to be construed liberally in favor of appellee, so as not to defeat the object and purpose of the insurance or indemnity: *Healey* v. *Mutual Accident Assn.,* 133 Ill. 556 (25 N. E. 52, 23 Am. St. Rep. 637, 9 L. R. A. 371).   Where it is sought to narrow the range of liability by insurance companies or societies, equivocal expressions are to be interpreted most strongly against the company: *Commercial Ins. Co.* v. *Robinson,* 64 Ill. 265 (16 Am. Rep. 557).   'The language of the policy, particularly in determining whether the liability is limited, is always to be strictly construed against the insurer': *Queen Ins. Co.* v. *Dearborn Sav. etc. Assn.,* 175 Ill. 115 (51 N. E. 717).   The language and arrangement of the clauses of Section 16 are the language and arrangement of appellant, and in such cases it was held, in *Union Mutual Accident Assn.* v. *Frohard,* 134 Ill. 228 (25 N. E. 642, 23 Am. St. Rep. 664, 10 L. R. A. 383), that the interpretation must be most strongly against appellant; that the language used should be construed, according to its common and literal meaning, in favor of the assured.   In *Forest City Ins. Co.* v. *Hardesty,* 182 Ill. 39 (55 N. E. 139, 74 Am. St. Rep. 161), it was

held that, where the contract of insurance is so framed as to leave room for construction, that construction should be adopted which will not impair the indemnity, and, if a clause in a policy is susceptible of two interpretations, courts will adopt the one which is most favorable to the assured, in order to indemnify him for the loss sustained. That case was cited and quoted from with approval in *Terwilliger* v. *National Masonic Accident Assn.*, 197 Ill. 9 (63 N. E. 1034)."

All parts of an instrument must be construed so as to make them harmonious and effectual if possible. It is required by Section 7 of Article IX of the defendant's constitution that all claims for benefits or indemnity must be presented to the national secretary of the association and that "such claims are not divisible and must be presented after the total recovery of the member." The possible time limit of reimbursement for total disability is one hundred and four consecutive weeks or two years, according to Section 3 of that article. We have in mandatory language the requirement that the claim must be presented after the total recovery of the member, which must mean, subject to the two-year limitation, that it cannot be presented before the member recovers. Reduced to its lowest terms it is in effect stated that no claim can exist until the recovery of the member. Giving these provisions effect in connection with Section 9 forbidding any action against the defendant unless commenced within six months after the refusal of the association to pay the same it is plain that the limitation must be held to run from the time when the defendant refuses to pay a claim which has been presented after the member has regained his health. The plaintiff had a right to recover for a period of disability amounting possibly to two years. To approve the contention of the defendant would be to hold that immediately on the happen-

ing of the accident it might renounce liability thereafter to accrue and thus reduce the two-year period to six months.

Its refusal to pay cannot be countenanced where it has the effect to violate or curtail the rights of the insured defined in other provisions of the contract. It is not by the mark to say that he could have commenced his action prior to July 21st, and then by supplemental complaints brought up the remainder of his demand for consideration, for it is expressly stipulated that claims are not divisible and in mandatory language the plaintiff was required to make presentation not before but after, he had regained his health.

There is an apparent conflict of authority between the precedents on the matter of conventional limitations in policies of insurance. One class holds that the time restriction prescribed in the policies must be so construed that it may be augmented by an additional provision to the effect that actions shall not be commenced until the expiration of a given period after the proofs of loss are submitted. Instances are cases like: *Hogl* v. *Aachen & Munich Ins. Co.,* 65 W. Va. 437 (64 S. E. 441, 131 Am. St. Rep. 972); *Stewart* v. *National Council Knights and Ladies of Security,* 125 Minn. 512 (147 N. W. 651); *Pacific Mutual Life Ins. Co.* v. *Adams,* 27 Okl. 496 (112 Pac. 1026). Others construe strictly the clause providing that no action shall be commenced after the period beginning with the happening of the fire or the death of the insured or the event causing the accident. Among cases apparently of the latter sort is *Egan* v. *Oakland Home Ins. Co.,* 29 Or. 403 (42 Pac. 990, 54 Am. St. Rep. 798), which holds that the limitation of six months from the date of the fire will be enforced though the policy said that the loss should not be payable until ninety days after furnishing said

proof.    Other cases cited in the defendant's brief are *Harvey* v. *Fidelity & Casualty Co.*, 200 Fed. 925 (119 C. C. A. 221) ; *Tebbets* v. *Fidelity & Casualty Co.*, 155 Cal. 137 (99 Pac. 501) ; *Paul* v. *Fidelity & Casualty Co.*, 186 Mass. 413 (71 N. E. 801, 104 Am. St. Rep. 594) ; *Lowe* v. *United States Mutual Acc. Assn.*, 115 N. C. 18 (20 S. E. 169) ; *Law* v. *New England Mutual Acc. Assn.*, 94 Mich. 266 (53 N. W. 1104) ; *Moest* v. *Continental Casualty Co.*, 55 Misc. Rep. 128 (104 N. Y. Supp. 553).    In most of these decisions, particularly *Egan* v. *Oakland Ins. Co.*, the injury for which indemnity was sought had fully passed, as in the *Egan Case,* a fire, and the cause of action had entirely accrued, while in the matter before us the claim was yet in process of development.

In the precedents cited it was possible that the casualty should happen, the damage fully accrue, the notice thereof be given, and proof of loss submitted, all well within the conventional period of limitation. But, as we have seen, in the present case the two-year possibility of the continuance of the sickness cannot be compressed within the six months' limitation.    Again, in most of the cases relied upon as precedents, the limitation is inaugurated by a happening either beyond the control of both parties or within that of the claimant so that good reason exists for restricting the time within which he may sue.    In brief, we are impelled to the conclusion that unless it cannot be avoided, that construction will not be placed upon the contract which will enable one party in its discretion to destroy or abridge a plain right of the other under the same contract.    We are of the opinion, therefore, that under the admitted facts the action was commenced in time.

The conclusion of the whole matter is that the judgment of the Circuit Court in granting a new trial must be affirmed.                                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS, concur.

MR. JUSTICE MCCAMANT took no part in the consideration of this case.