Argued February 18, reversed and remanded March 23, 1920.

## KENDALL *v.* TRAVELERS' PROTECTIVE ASSN.

(188 Pac. 188.)

**Appeal and Error—Rulings on Former Appeal were Law of Case and Binding on Parties and Court.**

1. A ruling, on a former appeal from an order granting a new trial, that an instruction should have been given, became the law of the case, binding alike upon the parties and the court.

**Trial—Requested Instruction as to Right to Recover Accident Insurance not Covered by One Given.**

2. In an action against a fraternal insurer for accident benefits, a requested instruction that if plaintiff directed a barber to remove an ingrowing hair, and he proceeded to remove it under plaintiff's instructions, plaintiff could not recover, though the work was unskillfully done, and the results not such as were anticipated, *held* not covered by an instruction given, which permitted the jury to find the element of accident in the barber's unskillfulness.

**Appeal and Error—Evidence not Sufficiently Different to Justify Refusal of Instruction Approved on Former Appeal.**

3. In an action against a fraternal insurer for accident benefits, evidence *held* not sufficiently different from that on a former trial to justify refusal of an instruction approved on the former appeal.

**Appeal and Error—Direction of Verdict Improper Where Court Ruled on Former Appeal That There was Question of Fact.**

4. In an action against a fraternal insurer for accident benefits, on account of disability resulting from blood poisoning claimed to

have been due to a wound inflicted by a barber while removing an ingrowing hair, a directed verdict was properly denied where the court ruled, on a former appeal from an order granting a new trial, that it was a question of fact whether the means producing the injury were accidental or not.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.

The defendant, Travelers' Protective Association of America, is a fraternal insurance corporation. The plaintiff, T. W. Kendall, was a member of the association, and entitled to all the benefits set forth in its constitution and by-laws. The association pays to a member $25 per week for a total disability and $12.50 per week for a partial disability. On November 13, 1914, a barber removed either one or two ingrowing hairs from the plaintiff's chin, and blood poisoning ensued, with the result that the plaintiff was wholly disabled for about thirty-two weeks and was partially disabled for about a week.

There were only two witnesses at the trial. The plaintiff testified in his own behalf, and the barber appeared as a witness for the defendant. These two witnesses did not give the same account of what occurred in the barber-shop. According to the version given by the plaintiff, he went to the barber-shop "for the purpose of getting a haircut and a shave." After the barber had shaved the plaintiff and cut his hair, but before the plaintiff left the chair, the barber stated, according to the testimony of the plaintiff, that "there was an ingrowing hair which should be taken out," whereupon the plaintiff said, "take it out." The plaintiff says that the hair was "at the edge of the chin," on "the left side of the chin, on the left point." The chair occupied by the plaintiff was "next to the door as we went in." After the plaintiff had told the barber to

remove the ingrowing hair, a towel supply man entered the shop, and thereupon while the towel man was "leaning up against" a post "to this side (the left) of me," and the barber was standing at the right side of the plaintiff, the towel man and the barber became involved in an altercation about a "shortage of towels, or an overcharge, or something of the kind." While in the act of attempting to remove the hair, and because of the altercation with the towel man, the "barber looked up," and he applied the tweezers "at a different place from where the hair was ingrowing," and removed a piece of the skin, causing a "wound." The following excerpt taken from the recorded testimony of the plaintiff is a concise statement of his recollection of what happened after he told the barber to remove the ingrowing hair:

"At the time, or just about the time, that" the barber "was taking the hair out, or just a moment before, he got into an altercation with a towel supply man, who came in, and I don't now remember whether it was when he came in, or when it was going out; anyway he was right by his chair, and as he attempted to get this hair out he looked up, having the fuss with the towel man, and made an endeavor to get the hair, and in doing so he removed quite a piece of the skin— made a wound that was very noticeable."

The barber "afterwards secured the hair." In the language of the plaintiff, there were two "operations" or attempts to secure the hair; one resulted in the "wound," but in the other the barber succeeded in removing the hair. The "wound" bled, and the barber "cauterized it with a caustic stick which they all have to stop the flow of blood." There was "a little inflammation" the next morning, "a decided inflammation in a very few days," and finally a case of pronounced blood poisoning. The plaintiff stated that

"the infection started in here from the wound." When asked, "Did the point where the hair was removed become infected?" This witness answered, "No, I think not; the infection started from this wound."

The barber testified that when the plaintiff sat down in the chair he said that he thought "there are some hairs bothering me," and he, the barber, thereupon looked and "saw a little red spot" in the middle of and "just under the point of the chin." According to the story told by the barber, the plaintiff then said that the "little red spot" had "been bothering him for eight or ten days," and "if you can see any hair there I would like to have you take them out." The barber heated his tweezers over an alcohol lamp, cooled the instrument in running cold water, bathed it in a solution of bichloride of mercury, "stuck it into a bottle of peroxide," and then removed the two hairs from the red spot. When asked whether he and the towel man became involved in an altercation, the barber answered, "Not that I know of." The witness stated that he did not "remember breaking the skin, or anything at all, because all I had to do was to lift the two hairs out of the top of it." The barber further testified that he did not "make any wound of any kind on him at all at no time." To the question, "Mr. Kendall has testified here that the ingrowing hairs were at one point on his face, and that you made a wound at another point on his face; is that true?" The witness gave the categorical answer, "No."

The constitution of the association contains the following provision for the payment of indemnity:

"Whenever a member of this association in good standing shall, through external, violent, and accidental means receive bodily injuries which shall in-

dependently of all other causes immediately and wholly disable him from transacting any and every kind of business pertaining to his occupation.''

Another provision found in the same constitution reads as follows:

''This association shall not be liable in case of injury, fatal or otherwise, inflicted by a member in good standing on himself, or in case of * * death or disability when caused wholly' or in part by any bodily or mental infirmity or disease or by intentional injuries causing death or disability inflicted by the member, or any other person, upon him, * * or injury, fatal or otherwise, resulting from any poison or infection (unless the infection is introduced into, by, or through an open wound, which open wound must be caused by external, violent, and accidental means and be visible to the naked eye) * * or disability resulting from medical or surgical treatment, * * nor shall the association be liable in any case where the injury or death is not caused by external, violent, and accidental means independently of all other causes and is not the sole or proximate cause of the death or disability.''

There was a verdict and a judgment for the plaintiff for $810.70; the full amount demanded by him. The defendant appealed.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. McCamant, Bronaugh & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief over the name of *Messrs. Davis & Farrell,* with an oral argument by *Mr. W. E. Farrell.*

HARRIS, J.—There have been two trials, with a judgment for the plaintiff in each instance. The

first verdict and judgment were set aside by the circuit judge and a new trial granted, and upon an appeal the order granting the new trial was affirmed: *Kendall* v. *Travelers' Protective Assn.,* 87 Or. 179 (169 Pac. 751). The case is now here on appeal from the second judgment. There are two assignments of error. The court refused to give the following instruction requested by the defendant:

"The jury is instructed that if plaintiff directed the barber to remove the ingrowing hair from his chin, and the barber proceeded to remove the hair under instructions from plaintiff, plaintiff cannot recover in this case, even though the work of the barber was unskillfully done, and the results were such as neither plaintiff nor the barber anticipated."

The trial court also refused to comply with the defendant's request to direct the jury to find for the defendant.

1, 2. At the first trial the defendant requested, but the court refused to give, the quoted instruction. On the first appeal we ruled that the instruction should have been given, and that ruling became the law of the case, binding alike upon the parties and the court: *Applegate* v. *Dowell,* 17 Or. 299 (20 Pac. 429); *Taylor* v. *Taylor,* 54 Or. 560, 567 (103 Pac. 524). Not even the substance of the requested instruction was given, unless it can be found in the following portion of the charge to the jury:

"The burden of proof in this case devolved upon the plaintiff. He must prove by a preponderance of evidence that he sustained such an accidental injury as is insured against in the constitution and by-laws of the defendant. In the absence of such proof plaintiff cannot recover. The defendant insured plaintiff only against bodily injuries received through external, violent, and accidental means. In order that plaintiff

may recover, he must satisfy you that his injuries were due to an accidental cause, and also that they were due to a violent cause. If the evidence fails to satisfy you on either of those points, your verdict will be for the defendant. If the abrasion of the plaintiff's chin was due to the intentional act of the barber in endeavoring to remove an ingrowing hair thereon, plaintiff cannot recover, and your verdict will be for the defendant. If, in removing the ingrowing hair from plaintiff's chin, the barber acted carefully, making no more incisions than he intended to make, and thereafter the wound became infected, causing the disability of which the plaintiff complains, then I instruct you that plaintiff cannot recover, and your verdict should be for the defendant. Plaintiff was insured by the defendant only against disability arising independently of all other causes, from bodily injuries received through external, violent, and accidental means. If, therefore, you find that plaintiff's disability was caused in part by something other than bodily injuries received through external violent and accidental means, you should find for the defendant.''

We are unable to agree with the plaintiff in his contention that the charge given by the court contains the substance of the requested instruction. The refusal to give the instruction, as requested by the defendant, permitted the jury to find the element of accident in the unskillfulness of the barber, if there was any. Moreover, the requested instruction is in complete harmony with the announcement made by the opinion delivered on the first appeal that ''the liability must be be determined by causes rather than consequences.'' Because of the refusal of the court to give the requested instruction, we are obliged to reverse the judgment, notwithstanding the fact that there have been two trials.

3. The record made at the second trial is in some particulars different from that of the first trial. The

plaintiff did not, at the first trial, testify that there were two "operations," or "two attempts to get out this ingrowing hair"; nor did he at that trial "say anything to the effect that the wound was at a different place from where the hair was ingrowing." These differences, however, are immaterial, so far as the law of the case is concerned. Aside from the two particulars mentioned, the testimony of the plaintiff was substantially the same in both trials. It was the theory of the plaintiff at both trials that the barber and the towel man became engaged in an altercation, as a result of which the plaintiff sustained the "wound" from which blood poisoning developed. It was the contention of the defendant at both trials that there was no evidence to show that the blood poisoning was caused by accidental means. This contention of the defendant naturally presents itself in two phases; one arising out of the defendant's, and the other out of the plaintiff's theory of the facts. The plaintiff concedes, if we correctly understand his position, that, if the story told by the barber is accepted as a correct account of what occurred, then the disability cannot be said to have been caused by accidental means. According to the barber, he did nothing except what he intended to do, and he was nowise disturbed or interfered with when doing what he intended to do, for he does not admit that he was involved in any altercation with the towel man. The law of the case as made on the first appeal is that the plaintiff cannot recover if the barber's narrative is believed. It is true that the barber was not produced as a witness at the first trial; but it is also true that, when he was produced as a witness at the second trial, he testified in substance that in removing the hairs he did nothing more than he intended to do.

4. It was not decided on the first appeal that there was no evidence to sustain a judgment; but, on the contrary, it was expressly ruled that it was a question "of fact for the jury to determine whether the means producing the injury was accidental or not." This ruling was made because of the testimony of the plaintiff concerning the altercation with the towel man; and when the court made that ruling it was equivalent to deciding that, if the story told by the plaintiff is accepted as a correct account of what happened, it is sufficient to support a finding that the disability resulted from accidental means. It was not error to refuse to direct the jury to return a verdict for the defendant. In brief, the law of the case as made on the first appeal required the trial court to give the requested instruction which we have already quoted in full; and it is also the law of the case that evidence to the effect that the "wound" was inflicted by reason and as a result of the alleged altercation, and in the circumstances narrated by the plaintiff, is sufficient to support a judgment for the plaintiff.

The judgment must be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., concur.