## JENSMA v. BENEFIT ASS'N OF RY. EMPLOYEES.

## SAME v. SUN LIFE ASSUR. CO. OF CANADA.

### Nos. 1596, 1595.

District Court, D. Idaho, S. D.
Feb. 19, 1932.

Rhodes & Estabrook, of Nampa, Idaho, and Richards & Haga, of Boise, Idaho, for plaintiff.

Graves, Kizer & Graves, of Spokane, Wash., and Scatterday & Stone, of Caldwell, Idaho, for defendants.

CAVANAH, District Judge.

While these two actions are brought by the plaintiff against different defendants upon two separate insurance policies, they were presented at the same time, and will be disposed of in this opinion.

The plaintiff is the beneficiary in each policy issued by the respective defendants upon her husband's life. The policies contain in substance identical provisions upon which the plaintiff predicates her alleged causes of action, as it is there provided that, in the event of the insured's death, the plaintiff should receive $5,000 in each case if the insured's death were the result "for loss resulting directly and exclusively of all other causes, from bodily injury sustained at any time during the life of this policy solely through external, violent and accidental means." The ordinary liability was paid, but the liability for accident in each case is contested.

The cause of the insured's death, as alleged in the complaints, appears to be: "That on or about the 28th day of May, 1930, while the said policy was in full force and effect, the insured, Cornelius P. Jensma, received a bodily injury solely through violent, external and accidental means, as follows,

to-wit: that on or about the 28th day of May, 1930, Dr. Samuel A. Swayne, a duly licensed, practicing physician and surgeon under the laws of the State of Idaho, residing at Nampa, Idaho, administered to the said insured a hay fever treatment (manufactured, designed and intended to be a treatment for the prevention and cure of hay fever) by injecting into the body of the insured a hay fever pollen extract, which said extract without the knowledge, fault or negligence on the part of the said Samuel A. Swayne or of the said insured, contained the spores of an anaerobic gas producing organism and from the effects of which the insured did die on the 31st day of May, 1930."

The insured was suffering from hay fever, and he went to Dr. Swayne, who, and he, thought it advisable and agreed to administer a hay fever treatment by injecting into the insured's body a hay fever pollen extract used and intended to be a treatment for the prevention and cure of hay fever, and he died shortly thereafter and as its incidental result.

It is urged on behalf of the plaintiff that the fatal result was due from a general infection of the anaërobic gas producing organism entering the body by being forced in through the wound on the body of the insured from the effects of which he died; while the defendants assert that it cannot be determined with any degree of certainty from what source the infection came as there are a number of possibilities as to how it occurred, and that, if the insured intended to receive the injection and the wound was intentionally caused by the patient, a recovery cannot be had.

We are required to consider whether the evidence would support the conclusion that the injury had been caused through violent, external, and accidental means within the fair scope and meaning of the policy—Was the death solely of accidental means as contended for by the plaintiff, or that the source of infection which caused the death cannot be determined?

The policies provide that the injury must be sustained "solely through external, violent and accidental means," and it is clear from the evidence that the injury which caused the insured's death was the act of injecting into his body the hay fever pollen extract resulting in the injection into his arm either from the contents of the syringe, or the infection being pushed into the arm with the syringe, or the infection was on the syringe at the time the injection was made, or, as a remote possibility, that the infection might

have occurred after the syringe was removed. There appears a conflict in the evidence, which are opinions and not evidence of actual fact, as to which one of these possibilities the infection came from.

The insured for some time before his death had suffered from hay fever, and during the spring of 1930 decided to take a serum treatment for his trouble. After examination by Dr. Swayne, it was found that his trouble was due to Russian thistle and sagebrush, and the serum treatment of thirty small vials of extract with thirty small vials of dilutant, which was obtained from the manufacturer, Holister-Stein Company, was used. It seemed that the process of the treatment was the usual method adopted in such cases, as the hypodermic syringe and needle were sterilized, the arm was cleansed with alcohol, the corks in the vials were cleansed in the same way as the arm, and the injection made into the deep tissues of the arm. After a number of treatments had been given and on the day after the last one was given, he went back to the office of the physician in the afternoon and complained of a soreness in the arm, and the nurse saw at the point of injection a reddened area, and she at once called the doctor and was by him instructed to put an alcohol dressing on, which was done. The arm was then bandaged. He complained then of his arm being sore. The arm was then opened, and he died shortly after the last treatment was given to him.

The opinion of the doctors who testified for the plaintiff was that the cause of his death was an infection from the contents of the material or serum on the syringe or forced in by the needle. The evidence does not sustain their contention as to the infection being caused from the condition of the syringe, as the testimony of the defendants, which is undisputed, was that the contents of the syringe could not have caused the infection, as the pollen extract after the injection given to the insured was taken to the state bacteriologist, who made a test to ascertain whether he could find any bacteria contamination, which he did not find. The testimony of Mr. Moffatt as to how the pollen extract so used was prepared discloses that it was improbable for one portion of the extract to be contaminated without extending through all the extract. There is evidence that after the injection into the insured's arm the same needle and syringe were used on other patients without disastrous effects and notwithstanding that fact an infection did occur on the arm of the insured from the spore of a

gas producing organism, and under such conditions the opinion of certain witnesses shows that the infection probably came either from the surface of the arm pushed in with the needle, or by an after infection due to rubbing or scratching.

The plaintiff was therefore obliged to prove that the means were accidental, and when, in fixing the meaning of "accidental means," the test is that the dire result was something unforeseen, unexpected, and unusual. If a result is such as follows from ordinary means voluntarily employed and not in an unexpected and unusual way, it cannot be called a result affected by accidental means, for in the act which precedes the injury something unexpected and unusual must occur which produces the injury. It would not be an accident under the natural meaning of the word "accidental" if the insured did what he and those acting with his consent intended to do and the way in which they intended.

The difficulty is to determine under the evidence with any degree of certainty or probability just how the infection occurred which caused the death of the insured. This the plaintiff must show, for we must not indulge in any conjecture, surmise, or uncertainty in determining whether the injury was caused "solely through external, violent and accidental means." An analysis of the evidence shows that the cause of infection might have probably occurred from other sources than those contended for by the plaintiff, and that the infection which caused the death of the insured was not caused by accidental means. It seems reasonable to conclude that the infection and the cause of the disease was acquired after the operation was completed, and to now say that it is an accident because an infection occurred after injecting into the arm a hay fever pollen extract, the contents of which was free of any bacteria contamination and the process used was the usual method adopted in such cases, and the insured and those acting with his consent did what they intended to do and the way they intended to do was the usual manner with no expectation that an injury would occur would be contrary to the rule accepted by the weight of authority in cases where the circumstances are similar to those here involved. It is impossible under the record to locate definitely upon the source from which the infection has developed. No proof appears as to where the contamination came from, and therefore one suffering from an infection caused by some undisclosed means employed during an operation should not recover on an accidental policy. See Lincoln National Life Insurance Co. v. Erickson (C. C. A.) 42 F.(2d) 997; Kendall v. Travelers' Protective Association, 87 Or. 179, 169 P. 751; Fidelity & Casualty Co. v. Stacey's Ex'rs (C. C. A.) 143 F. 271, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955; Kimball v. Massachusetts Acc. Co., 44 R. I. 264, 117 A. 228, 24 A. L. R. 726; Maryland Casualty Co. v. Spitz (C. C. A.) 246 F. 817, L. R. A. 1918C, 1191; Ramsey v. Fidelity & Casualty Co., 143 Tenn. 42, 223 S. W. 841, 13 A. L. R. 651.

As to the contention of the defendants of failure to give the notice of injury or sickness to them on which claim may be based, the case falls within the rule that immediate notice means a reasonable time, and, in determining that fact, the situation of the plaintiff and all the circumstances by which she was surrounded must be considered. As soon as she knew of the policy, she, without delay, gave the notice which, together with her situation meets the objection made. Couch, Cyc. Ins. Law Vol. 7, 5478 Sec. 1538K; Horsfall v. Pacific Mutual Life Ins. Co., 32 Wash. 132, 72 P. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846; Concordia Fire Insurance Co. v. Waterford, 145 Ark. 420, 224 S. W. 953, 13 A. L. R. 1387.

It follows from the conclusions reached a decree is directed for the defendants in each case, with costs.