Argued March 9; affirmed April 6, 1938

# RAMSEY *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(77 P. (2d) 1109)

Department 2.

*T. Walter Gillard*, of Portland (William P. Lord and Robert D. Austin, both of Portland, on the brief), for appellant.

*Victor R. Griggs* and *Oliver Crowther*, Assistant Attorneys General (I. H. Van Winkle, Attorney General, on the brief), for respondent.

BAILEY, J. There is only one question involved on this appeal, to wit: Did the plaintiff sustain a personal injury by accident arising out of and in the course of his employment and caused by violent or external means? The defendant, State Industrial Accident Commission, rejected plaintiff's claim for compensation based on alleged injuries, on the ground that the injury which he sustained was not covered by the state workmen's compensation law, and the plaintiff thereupon appealed to the circuit court. A jury was impaneled to hear the case, but at the close of the evidence the plaintiff moved for a directed verdict in his favor, and the defendant likewise moved for a directed verdict in its favor. The court then took the case from the jury and made special findings of fact and conclusions of law. Based thereon, judgment was entered in favor of the defendant, and the plaintiff has appealed to this court.

The plaintiff and his employer were subject to the provisions of the state workmen's compensation act. The injuries of which the plaintiff complains are alleged to have resulted from work which he performed on August 31 and September 1, 1936. At that time and for six months prior thereto he had been employed by A. Young & Co., as a mechanic in that company's iron fabricating plant in Portland. A short time prior to the

incident mentioned in the complaint the plaintiff's employer had installed in its plant a new furnace for heating iron. This furnace was not working satisfactorily and the employer decided that changes must be made in its firebox. The firebox was approximately seven feet long, about thirty inches wide at the top and bottom, and some twenty-four inches deep. The interior of the furnace was lined with brick, with the exception of the door in front, which was approximately twenty-four by thirty inches in size.

The plaintiff was instructed by his employer on August 31, to crawl into the firebox and remove some of the brick lining. The heat had been shut off for about thirty-six hours and the temperature inside the firebox was between 125° and 140° Fahrenheit. The interior was not hot enough to burn plaintiff's hands, but to protect him from the heat, planks and sacks were placed inside the furnace to keep him from contact with the hot bricks.

On that day the plaintiff was engaged in the work of removing the brick lining about two or three hours, remaining inside the furnace for intervals of about fifteen minutes and then coming out to cool off and to be relieved from the cramped position which he was obliged to assume inside the furnace. The temperature outside the furnace was approximately 85°. The trial court noted in its findings that in order to provide circulation of air inside the firebox the plaintiff made use of a ¾-inch air hose attached to an air compressor. The air from this hose "had a temperature equal to that of the general atmosphere", and "the volume of air and velocity inside the furnace from this air hose was regulated by the plaintiff, and plaintiff allowed just enough air to create a circulation inside the fur-

nace. The air from the hose would strike the back wall of the furnace.''

After some of the lining was removed, the firebox was tested with heat, and as the results were not satisfactory the plaintiff was instructed on the following day to replace the bricks which he had removed. On September 1, he spent about three hours in doing that work.

The court found that:

''This was the first time the plaintiff had been inside that particular furnace, as it had recently been constructed, but he had done this type of furnace work before. When he went into the furnace he expected it to be hot. * * * He did the work in the ordinary manner and as a part of his regular routine. Having the air hose was part of the routine of his work as he could not do the work without it, it being used for circulation. This work was performed in the manner in which jobs of that kind are ordinarly performed by men who knew the business as he did, all of which was true on both days he worked inside the furnace. He knew what would be expected of him when he started the job and the work at all times was done in the ordinary and usual manner. Nothing unusual or unexpected happened. There was no mischance, slip or mishap occurred in doing the acts themselves, said acts being all voluntary, intentional, and done in the manner intended by ordinary means voluntarily employed.''

The court further found that at ''the end of the first day's work on the furnace, plaintiff noticed some stiffening in his muscles and joints. * * * About two o'clock of the afternoon of September 1st he had stiffened up so badly he had to go home.'' A further finding was to the effect that ''as a result of performing said work as aforesaid plaintiff suffered an attack of articular rheumatism and by reason thereof was

temporarily and totally disabled from September 1, 1936, to November 24, 1936, and thereafter suffered a temporary partial disability equivalent to 20 per cent.''

At the time of becoming disabled the plaintiff was fifty years of age. His teeth, tonsils and prostate gland were infected, and it was the opinion of his medical expert witness that the articular rheumatism was due to some of this infection and might to some degree have been precipitated by ''his going in and out of the furnace from a high temperature to the lower temperature''.

It was the opinion of the medical expert called by the defendant that the plaintiff was not chilled by the induction into the furnace of the air current, as it was directed against the back wall of the furnace and not upon the plaintiff's body.

■ The findings of fact which we have referred to generally and those which we have hereinbefore quoted are supported by substantial and competent evidence, and therefore must be accepted as conclusive on appeal. In addition, there is little, if any, dispute as to the other facts which we have hereinabove set forth, with the possible exception of a difference of opinion as to the effect of the change of temperature in causing the plaintiff's physical impairment.

Section 49-1827, Oregon Code Supp. 1935, reads as follows:

''If any workman while he is subject to this act and in the service of an employer who is thus bound to contribute to the industrial accident fund shall sustain a personal injury by accident arising out of and in the course of his employment caused by violent or external means, he or his beneficiaries or dependents, if

the injury result in death, shall receive compensation
as hereinafter provided."

To be entitled to receive compensation from the
industrial accident fund the workman must have been
injured by accident caused by violent or external means.
In passing upon the question presented by this appeal,
we are afforded but little assistance by the decisions
from other jurisdictions, as in many instances they
are based on differently worded compensation statutes.
For example, in Iowa, Massachusetts and some other
states all that is necessary to entitle a workman to
receive compensation is that he receive a personal in-
jury arising out of and in the course of his employment:
*Almquist v. Shenandoah Nurseries, Inc.*, 218 Iowa 724
(254 N. W. 35, 94 A. L. R. 573 and annotations).

■ The variations in the language of other statutes is
referred to in *Demagalski v. State Industrial Accident
Commission*, 151 Or. 251 (47 P. (2d) 947), and it is
there pointed out that Oregon is committed to the
doctrine that for an injury to be compensable it is
necessary for it to have been caused by accidental
means, not merely that the result should have been
accidental. See, also, *Caldwell v. Travelers' Insurance
Company*, 305 Mo. 619 (267 S. W. 907, 39 A. L. R. 56).
It was observed in *Ryan v. State Industrial Accident
Commission*, 154 Or. 563 (61 P. (2d) 426), that decisions
of this court construing the Oregon workmen's com-
pensation act recognize that in order to entitle a work-
man to compensation the injury on which he bases his
claim must be traumatic, as distinguished from
idiopathic.

■ Defining "external, violent and accidental
means", in *Kendall v. Travelers' Protective Associa-
tion*, 87 Or. 179 (169 P. 751), a case involving the in-

terpretation of an accident indemnity policy, this court said:

"We note that the defendant does not insure merely against injuries although they might constitute an unexpected effect. The damage, whether anticipated or not as a result, must have happened through accidental, violent and external means. * * * A man's leg might be broken by a runaway team coming suddenly upon him from behind. He might reasonably expect to be confined to his bed for some weeks and yet the cause of the fracture would be accidental. On the other hand, he might purposely inflict upon himself a slight pin scratch which would ordinarily pass unnoticed and septicaemia might ensue and unexpectedly amputation of the injured part might become necessary, yet the scratch would not be accidental. In other words, under such a policy as this the liability must be determined by causes rather than consequences."

The ailment from which the plaintiff is suffering is not an occupational disease, although even if it were such disease he would not be entitled to compensation under the workmen's compensation act, as heretofore held by this court. It would seem that his disability was brought on largely by his existing physical condition. It is clear that the plaintiff did not sustain a personal injury through accident caused by violent or external means. The work he undertook was done by him intentionally and voluntarily, in the usual and ordinary manner. No mischance, slip or mishap occurred in performing it. His claim for compensation was therefore properly rejected by the State Industrial Accident Commission.

The judgment appealed from is affirmed.

BEAN, C. J., and RAND and LUSK, JJ., concur.