Argued April 4, affirmed July 24, 1963

# CHRISTENSEN *v.* THE PRUDENTIAL INSURANCE COMPANY

384 P. 2d 142

*A. J. Morris,* Eugene, argued the cause for appellant. On the brief were Bailey, Hoffman, Spencer & Morris, and Lewis Hoffman, Eugene.

*Robert F. Maguire,* Portland, argued the cause for respondent. On the brief were Maguire, Shields, Morrison, Bailey & Kester, and Thomas S. Moore, Portland.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

PERRY, J.

The plaintiff, as beneficiary under a policy of life insurance, brought this action to recover under a clause providing for double indemnity in case of accidental death. At the close of the case the defendant moved for a directed verdict, which motion was granted by the court, and the plaintiff appeals. The policy provided:

"Upon receipt at the Home Office of due proof that the death of the Insured occurred *as a result, directly and independently of all other causes,* of bodily injuries effected solely through external, violent and accidental means \* \* \* (but) no such benefit shall be payable if such death results \* \* \* (g) directly or indirectly from bodily or mental infirmity or disease in any form \* \* \*."

Both parties agree that the insured's death must have resulted from means which were not only external, but violent and accidental.

The defendant admits the death of the insured, Andrew S. Christensen, Jr., plaintiff's status as beneficiary, and the payment of the face value of the policy, but denies that the insured's death occurred solely through external, violent and accidental means.

The facts are not in dispute, and are as follows:

The insured was 44 years of age at the time of death on March 14, 1961. He resided in Drain, but carried on his vocation in Eugene. He was described by his physician as having a drinking problem, but there is no evidence of intoxication at the time of death. A gastric resection for an ulcer had been performed in 1954, and there had been a full recovery. To his physician who had examined him a few days prior to his death, he appeared to be in normal physical health, except for his complaint that he had "pain in the superpubic region," which is just over the bladder, the lower abdomen, and he complained of frequent urination. The doctor reached a conclusion that he had "cystitis, i.e., an inflammation of the bladder." He often complained to Mrs. Christensen of pains in his abdomen, but did not just prior to his death.

The evening prior to Mr. Christensen's death he watched motion pictures of the Patterson-Johansen fight at the Elks Club in Eugene, returning home about 10 p.m. He appeared normal that evening. The following morning, although he had planned to go to Eugene, he decided to sleep in, and his wife proceeded to Eugene without him. Between noon and 3 p.m. he ate lunch at a restaurant in Drain. Mrs. Christensen arrived home from Eugene around 3:30. The deceased was home, and she prepared coffee for them. About 4 p.m. she left for work.

At about 6:30 p.m. the son Dennis arrived home. He found his father sitting in a rocking chair, dressed in his pajamas. The son prepared tomato soup and tuna fish sandwiches. The deceased partook of the soup and ate one of the sandwiches. The son testified the food was palatable and he had no trouble in di-

gesting it. There is no evidence that the food was harmful.

. . Mrs. Christensen returned home about 8 p.m. She noticed her husband was in bed and asleep, snoring. At about 10:30 Mrs. Christensen went into the bedroom and noticed he was on "his hands and knees, *, * * his head was turned to one side and he had vomited." She testified he got on his hands and knees "that way quite often if he was restless or uncomfortable."

Mr. Christensen was apparently dead when found by his wife. Dr. McMilan, who conducted the autopsy, made the following diagnosis: (1) Suffocation with advanced congestion and edema of the lungs; (2) obstruction of the trachea and bronchi by aspirated gastric contents; (3) coronary arteriosclerosis with areas of insufficiency; (4) an old partial gastric resection; (5) right ventricular dilatation; and other findings entirely immaterial to the issues. He found no acute disease of the stomach and was of the opinion that the cause of death was suffocation caused by the gastric content plugging the airways to the lungs. The gastric content in the airways was identical with that found in the stomach. It was unidentifiable as food, "brownish green" in color and granular in content. The fact that the content was granular was not abnormal. It came about through the regular digestive process.

All of the medical testimony is that the gastric content arrived in the air passages to the lungs through failure of the epiglottis to function properly and close and keep closed the air passage from the esophagus to the lungs while the deceased was vomiting; and that the epiglottis, an elastic cartilage, is not con-

trolled volitionally, but by the autonomic nervous system. All of the medical testimony offered upon the subject agrees that the vomiting was not caused by the food itself, and the regurgitation was due to some failure of the stomach to perform its proper function; that usually this failure of the stomach to perform is due to some irritation or inflammatory process of, or in, the stomach lining.

The question presented is whether the aspiration of the contents of the stomach by causes unknown and the failure of the glottis to close properly so that the contents of the stomach could not enter the lung passages, causing suffocation and death, comes within the meaning of the language of the policy. We are of the opinion that these facts do not bring the deceased's death within the policy terms.

■ The policy, with respect to a compensable injury, provides that the injury shall be the result of external, violent and accidental causes. "[E]ach of these elements must be present to create liability  *  *  *." *Fries v. J. Hancock Mut. L. Ins. Co.,* 227 Or 139, 360 P2d 774.

The plaintiff cites these cases wherein it was held that the taking of food or other substances by mouth fall within the definition of an external cause: *Jenkins v. Hawkeye Commercial Men's Association,* 147 Iowa 113, 124 NW 199 (accidentally swallowing a fish bone); *Maryland Casualty Co. v. Hudgins,* Tex Civ Ct of Appeals, (1903), 72 SW 1047 (oysters eaten which inflamed the intestinal walls); (reversed on other grounds, 97 Tex 124, 76 SW 745); *Gohlke v. Hawkeye Commercial Men's Association,* 198 Iowa 744, 197 NW 1004 (taking Sal Hepatica effervescent salts, which threw off gas, causing the glottis to close so that death

resulted from asphyxiation); *American Acc. Co. of Louisville v. Reigart,* 94 Ky 547, 23 SW 191 (swallowing a piece of beefsteak which accidentally lodged in the "windpipe", causing death).

The above cases, however, will not support the plaintiff's position here taken, for each case discloses that the substance taken into the body was not, at the time taken, fit or suitable in its then condition for human consumption, thus being the direct cause or means of producing the injury. As previously pointed out, there is no evidence in this case that the food as taken into the body was not wholly fit for human consumption or could cause any bodily injury.

The plaintiff also relies upon *Peoples Life Ins. Co. v. Menard,* 124 Ind App 606, 117 NE2d 376. In that case the insured had eaten as his last meal, cubed boiled potatoes, cubed canned meat, spinach, bread, butter, coffee, and cinnamon rolls. Very shortly after eating, the insured vomited and died. "It was determined by the medical testimony that the immediate cause of decedent's death was asphyxiation due to choking on regurgitated food and that such asphyxiation was caused by the accidental lodging in decedent's larynx of two small pieces of "Prem" meat measuring one centimeter by eight-tenths centimeter by one-half centimeter in size, and also some soft food material and some greenish material like spinach." A majority of the court, without clearly distinguishing between the mechanical failure of the bodily action caused by the food itself, and the mere failure of the body's mechanical action, held that the insured's death was caused by external, violent and accidental means. The minority drew this distinction and dissented. The majority opinion has been subsequently examined by other courts, and in all instances rejected.

In *McCallum v. Mutual Life Insurance Co. of New York,* 175 FSupp 3, an autopsy revealed the immediate cause of death was the failure of the glottis to function properly, with the result that vomit was taken into the windpipe and bronchi, which caused suffocation. The court stated:

> "In her argument, plaintiff tacitly concedes that the Radcliffe case is directly in point. She argues, however, that Menard affords the more logical reasoning. To the extent that Menard may support an 'external means' where food has passed into the stomach and regurgitated after changing into matter, this Court disagrees. The substance, as contained within the stomach, was inside the body and on its way outside during the vomiting process. This, in no sense, constitutes an 'external means'."

In *Radcliffe v. National Life & Accident Insurance Co.,* Tex CCA (1957), 298 SW2d 213, the insured died as a result of the regurgitation of the stomach contents which lodged in the trachea and bronchi, causing suffocation. There was no evidence that the food ingested was of "deleterious or hurtful quality." The court held the death was not due to external and accidental means. In speaking of the Menard decision, the Texas court said:

> "Our principal difficulty in following the reasoning of the majority of the Indiana court is in attempting to think of 'the lodging of the food' in the windpipe as the sole cause of death. Lodging as we conceive it is the result or affect of a cause rather than a cause itself. That the Indiana court thought of 'the lodging of the food' in the windpipe as the sole cause or active agency producing death —a thought we are unable to embrace—is evident from the following sentence in the opinion of the majority: 'The lodging of the food in the windpipe was an *intervening agency of a violent character*

which was the proximate cause of his death, and an intervening agency within the doctrine and principles of the Indiana cases.' (Emphasis supplied.) We do not concur in the concept of non-noxious, wholesome food as violent or that when moved by forces outside itself food may be said to constitute a sole agency. Agency implies activity and force. We are convinced that the food here was rather a tool or instrumentality of extraneous forces—not in and of itself, and without being first moved, an agency in the sense of cause or means, as ruled in Bryant v. Continental Casualty Co., supra."

In *Spott v. Equitable Life Insurance Company of Iowa,* 25 Cal Rptr 782 (1962), the insured died of suffocation by the regurgitation of liquid which lodged in the trachea and bronchi, due to the failure of the glottis to close. The court held the death did not result "solely through external, violent and accidental means," and said:

"Four cases from other jurisdictions do, however, directly determine application of like policy provisions to deaths resulting from aspiration of regurgitated material. In one (Peoples Life Ins. Co. v. Menard, 124 Ind.App. 606, 117 N.E.2d 376) a divided court affirmed judgment requiring payment by the insurer. The opposite conclusion has been reached in three decisions (Radcliffe v. National Life etc. Co., Tex. Civ.App., 298 S.W.2d 213; McCallum v. Mutual Life Insurance Co. of New York, 4 Cir., 274 F.2d 431, affirming D.C., 175 F. Supp. 3; Towner v. Prudential Insurance Company of America, La.App., 137 So.2d 449). Each rejects the reasoning of the majority in Menard, and finds the dissent in that case more persuasive. We agree."

See also, to the same effect, *Towner v. Prudential Insurance Company of America,* La App, 137 So2d 449, above cited.

■ This court has firmly established the rule that under a policy such as here presented the cause of the injury must be accidental, not the result. "In other words, under such a policy as this the liability must be determined by causes rather than consequences." *Kendall v. Travelers' Protective Assn.*, 87 Or 179, 190, 169 P 751.

■ In the matter before us there is no evidence that the nausea and vomiting or the failure of the glottis to close were caused by the food taken. Common experience teaches that vomiting, when not caused by harmful food taken or by trauma, is the result of a physical disorder.

■ The agreement of the physicians that the aspiration of the stomach content into the trachea and bronchi was due to some failure of the autonomic system to close and keep closed the glottis, and not to the content of the stomach also discloses that the fact there was something in the stomach that had been food which in its changed condition reached the trachea and bronchi, blocking the passage of air to the lungs, was a condition and not a cause.

The judgment of the trial court is affirmed.